Robert C. Schubert (No. 62684)
Noah M. Schubert (No. 278696)
SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
Telephone: (415) 788-4220
Facsimile:  (415) 788-0161
rschubert@shubertlawfirm.com
nschubert@shubertlawfirm.com

Thomas G. Shapiro, *Admitted pro hac vice*
Patrick J. Vallely, *Admitted pro hac vice*
SHAPIRO HABER & URMY LLP
Seaport East
Two Seaport Lane
Boston, MA 02210
Telephone: (617) 439-3939
tshapiro@shulaw.com
pvallely@shulaw.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GABRIELA ROJAS-LOZANO, Individually and on Behalf of All Other Persons Similarly Situated<br><br>Plaintiff,<br><br>vs.<br><br>GOOGLE, INC.,<br><br>Defendant. | Case No. 3:15-cv-03751-JSC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT GOOGLE INC.'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**<br><br>Date:   December 10, 2015<br>Time:  9:00 a.m.<br>Ctrm:  F – 15th Floor<br>Judge:  Honorable Jacqueline Scott Corley |

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

STATEMENT OF FACTS ......................................................................................................3

    A.  CAPTCHAs and Google's reCAPTCHA. ......................................................3

    B.  Plaintiff's Response to a reCAPTCHA Prompt. ............................................4

    C.  Procedural History. ........................................................................................5

ARGUMENT ..........................................................................................................................6

  I.  Google Cannot Avoid Chapter 93A Liability to Massachusetts Consumers
    Through a Contractual Waiver. ..............................................................................6

  II.  Plaintiff States a Claim Under the UCL. ................................................................8

    A.  Plaintiff Pleads Unlawful, Unfair, and Deceptive Acts. .................................8

      1.  Plaintiff Pleads Unlawful Acts..................................................................8

      2.  Plaintiff Pleads Unfair Acts. ....................................................................9

      3.  Plaintiff Pleads Deceptive Acts. .............................................................10

    B.  Plaintiff's Allegations of Misrepresentations Comply with Rule 9(b). .......11

    C.  Plaintiff is Entitled to an Inference of Reliance as to Plaintiff's Allegations of
      Misrepresentations and Omissions. ..............................................................13

    D.  Plaintiff Alleges a Loss of Money and Property.........................................15

  III.  Plaintiff States a Claim Under the CLRA. .........................................................16

    A.  Gmail Is Both a Good and a Service Under the CLRA. ...............................17

    B.  Plaintiff Identifies a Misrepresentation.......................................................19

    C.  Plaintiff Is Entitled to an Inference of Reliance. ..........................................19

    D.  Plaintiff Entered Into a Transaction in Connection with Google's Gmail
      Service and Lost Money or Property from the Transaction........................19

    E.  The CLRA's Procedural Requirements Pose No Barrier to Plaintiff's Claim............20

  IV.  Plaintiff States A Claim For Quasi-Contract. ....................................................22

  V.  In the Alternative, Plaintiff Seeks Leave to Amend. ...........................................24

CONCLUSION......................................................................................................................24

PL.'S OPP TO MOT. TO DISMISS AM.
COMPL. – CASE NO. 3:15-CV-03751-JSC

1

### TABLE OF AUTHORITIES

<u>Cases</u>

*Anderson v. Comcast Corp.*,
    500 F.3d 66 (1st Cir. 2007)................................................................................ 6, 7

*Aspinall v. Philip Morris Cos.*,
    813 N.E.2d 476 (Mass. 2004) ................................................................................ 6

*Astiana v. Hain Celestial Grp., Inc.*,
    783 F.3d 753 (9th Cir. 2015) ............................................................................... 23

*Backhaut v. Apple, Inc.*,
    74 F. Supp. 3d 1033 (N.D. Cal. 2014) ................................................................. 13

*Berger v. Home Depot USA, Inc.*,
    741 F.3d 1061 (9th Cir. 2014) ............................................................................. 24

*Bruton v. Gerber Prods. Co.*,
    961 F. Supp. 2d 1062 (N.D. Cal. 2013) ............................................................... 14

*Canal Elec. Co. v. Westinghouse Elec. Corp.*,
    548 N.E.2d 182 (Mass. 1990) ........................................................................ 6, 7, 8

*Chapman v. Skype Inc.*,
    220 Cal. App. 4th 217 (2013) ......................................................................... 13, 14

*Cortez v. Purolator Air Filtration Prods. Co.*,
    23 Cal. 4th 163 (2000) ............................................................................... 9, 16, 20

*Digby Adler Grp., LLC v. Mercedes-Benz U.S.A., LLC*,
    2015 U.S. Dist. LEXIS 116427 (N.D. Cal. Sept. 1, 2015) ............................... 12

*Doe v. Cultural Care, Inc.*,
    No. 10-11426, 2011 U.S. Dist. LEXIS 28226 (D. Mass. Mar. 17, 2011).......... 7

*Durrell v. Sharp Healthcare*,
    183 Cal. App. 4th 1350, 1370–71 (Cal. Ct. App. 2010) ................................... 23

*Elsesser v. Sleek, Inc.*,
    No. SUCV2011-03509B, 2012 Mass. Super. LEXIS 193
    (Super. Ct. May 25, 2012) ................................................................................... 7

*Eminence Capital, LLC v. Aspeon, Inc.*,
    316 F.3d 1048 (9th Cir. 2003) ............................................................................. 24

*ePresence, Inc. v. Evolve Software, Inc.*,
    190 F. Supp. 2d 159 (D. Mass. 2002) .............................................................. 7, 8

*Falk v. Gen. Motors Corp.*,
    496 F. Supp. 2d 1088 (N.D. Cal. 2007) .............................................................. 12

*Figy v. Amy's Kitchen, Inc.*,
    No. CV 13-03816 SI, 2013 U.S. Dist. LEXIS 167723
    (N.D. Cal. Nov. 25, 2013)................................................................................... 14

*Fraley v. Facebook, Inc.*,
  830 F. Supp. 2d 785 (N.D. Cal. 2011) ................................................................ 9, 16, 20

*Graebner v. James*,
  2012 U.S. Dist. LEXIS 175508 (N.D. Cal. Dec. 11, 2012) ............................................. 12

*Greentree Software, Inc. v. Delrina Tech., Inc.*,
  No. 95-20799, 1996 U.S. Dist. LEXIS 22961 (N.D. Cal. Apr. 10, 1996) ......................... 8

*Haskins v. Symantec Corp.*,
  No. 13-cv-01834, 2013 U.S. Dist. LEXIS 169865 (N.D. Cal. Dec. 1, 2013)................. 17

*Hawthorne v. Umpqua Bank*,
  No. 11-cv-06700, 2013 U.S. Dist. LEXIS 153697 (N.D. Cal. Oct. 25, 2013) ............... 18

*Hinojos v. Kohl's Corp.*,
  718 F.3d 1098 (9th Cir. 2013) ....................................................................................... 20

*Imber-Gluck v. Google, Inc.*,
  No. 5:14-cv-01070, 2014 U.S. Dist. LEXIS 98899 (N.D. Cal. July 21, 2014) ............... 23

*In re Carrier IQ, Inc. Consumer Privacy Litig.*,
  78 F. Supp. 3d 1051 (N.D. Cal. Jan. 21, 2015)................................................................ 9

*In re Facebook Privacy Litig.*,
  791 F. Supp. 2d 705 (N.D. Cal. 2011) ........................................................................... 20

*In re First Alliance Mortg. Co.*,
  471 F.3d 977 (9th Cir. 2006) ........................................................................................... 8

*In re Google Android Consumer Privacy Litig.*,
  No. 11-md-02264, 2014 U.S. Dist. LEXIS 31430 (N.D. Cal. Mar. 10, 2014) ............... 16

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) .................................................................................................. 14

*In re Toyota Motor Corp. Unintended Acceleration Mktg.,*
    *Sales Practices & Products Liab. Litig.*,
  754 F. Supp. 2d 1208 (C.D. Cal. 2010) ......................................................................... 11

*Infostream Group, Inc. v. Paypal, Inc.*,
  No. C 12-748, 2012 U.S. Dist. LEXIS 122255 (N.D. Cal. Aug. 28, 2012)..................... 16

*Kearns v. Ford Motor Co.*,
  567 F. 3d 1120 (9th Cir. 2009) ..................................................................................... 12

*Kwikset Corp. v. Superior Court*,
  51 Cal. 4th 310 (2011) ............................................................................................ 14, 15

*Ladore v. Sony Computer Entm't Am., LLC*,
  75 F. Supp. 3d 1065 (N.D. Cal. 2014) ..................................................................... 17, 22

*LiMandri v. Judkins*,
  52 Cal. App. 4th 326 (1997) ......................................................................................... 11

*Linkage Corp. v. Trs. of Bos. Univ.*,
  679 N.E.2d 191 (Mass. 1997) ......................................................................................... 6

*Morales v. Unilever U.S., Inc.,*
    No. 2:13-2213, 2014 U.S. Dist. LEXIS 49336 (E.D. Apr. 9, 2014) .............................. 14

*Paulus v. Bob Lynch Ford, Inc.,*
    139 Cal. App. 4th 659 (2006) ........................................................................................ 9

*Perrine v. Sega of Am., Inc.,*
    No. C 13-01962, 2013 U.S. Dist. LEXIS 173311 (N.D. Cal. Oct. 3, 2013) ..................... 17

*Roddenberry v. Roddenberry,*
    44 Cal. App. 4th 634 (1996) ........................................................................................ 11

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003) ...................................................................................... 12

*Wal-Noon Corp. v. Hill,*
    45 Cal. App. 3d 605 (1975) .................................................................................... 22, 23

*Wilson v. Hewlett-Packard Co.,*
    668 F.3d 1136 (9th Cir. 2012) ...................................................................................... 10

*Yunker v. Pandora Media, Inc.,*
    No. 11-cv-03113, 2014 U.S. Dist. LEXIS 30829 (N.D. Cal. Mar. 10, 2014) ................. 16

## **Statutes**

Cal. Bus. & Prof. Code §§ 17200, *et seq.*,
    California Unfair Competition Law ("UCL") ............................................................. *passim*

Cal. Bus. & Prof. Code § 17204 ............................................................................... 14, 15

Cal. Civ. Code § 1668 .................................................................................................... 23

Cal. Civ. Code § 1760, *et seq.*,
    California Consumer Legal Remedies Act ("CLRA"), ............................................ *passim*

Cal. Civ. Code § 1770 ............................................................................................... 17, 19

Cal. Civ. Code § 1782(a) ............................................................................................... 21

Cal. Lab. Code § 1182.12 ................................................................................................ 9

Mass. Gen. Laws ch. 93A ......................................................................................... *passim*
    Section 2 ............................................................................................................ *passim*
    Section 9 ............................................................................................................... 6, 8
    Section 11 ............................................................................................................. 6, 8

## **Rules**

Fed. R. Civ. Proc. Rule 9(b) ...................................................................................... 11, 12

Fed. R. Civ. Proc. 15(a) ................................................................................................. 24

**INTRODUCTION**

This case arises from Google's "reCAPTCHA" website prompts, which require website users to decipher images of distorted words, and type in the text they have deciphered, before accessing features of a website. The reCAPTCHA prompt is used in thousands of different webpages. A website user's response to a reCAPTCHA prompt is for the purported purpose of ensuring that the user is a legitimate human user rather than an automated computer program.

Plaintiff alleges that Google' reCAPTCHA required website users to decipher an image of and enter **two** words in response to reCAPTCHA, even though the requirement of deciphering a second image had no security purpose. Rather, the second image was a word Google needed to have deciphered for the purpose of Google's business of digitizing texts for profit. That is, Google operates a highly profitable digitization business, such as digitizing the archives of *The New York Times*. Google's technology is not able to decipher all the words in the material being digitized. Therefore, instead of providing a software program that requires website users to decipher one image correctly for security purposes, its reCAPTCHA program requires the user to decipher a second image to further Google's digitization business.[1] In short, Google obtains the benefit of the time and labor of the users who decipher the second image. Google deceptively and unfairly obtains the fruits of this labor from unwitting website users, unjustly enriching itself at the expense of such users. Plaintiff alleges that this conduct (as described more fully below) violated Mass. Gen. Laws ch. 93A § 2 ("Chapter 93A"), the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1760, *et seq.*; and that Google was unjustly enriched.

***The Chapter 93A Claim.*** Google claims that consumers have waived any right to bring a Chapter 93A claim due to a choice of law clause in Google's Terms of Service selecting California law. Consumer claims under Chapter 93A, however, are not waivable, either expressly

---

[1] The theory is that if enough persons who enter the correct word for the first distorted image (a word that Google knows) also enter the same word for the second image, Google has confidence that the word is the correct word for that image.

or through clauses that operate as a waiver of rights. The choice of law clause Google unilaterally imposed on its users does not insulate it from Chapter 93A liability.

**The UCL Claim.** Plaintiff pleads a UCL claim on multiple grounds, including that Google's conduct was **unlawful** (in that Google violated the CLRA, as described below); **unfair** (for multiple reasons, including that Google violated California's public policy against unpaid labor); and **deceptive** (by failing to disclose to website users that Google profited from their responses to reCAPTCHA prompts). Google's argument that Plaintiff fails to plead reliance lacks merit because Google's conduct in profiting from users' unpaid labor is unfair with or without any misrepresentation. But, even with respect to Plaintiff's additional allegation that Google misled consumers about the reCAPTCHA prompt (which forms only part of Plaintiff's claim), Plaintiff is entitled to a presumption of reliance based on the materiality of the information Google omitted to tell users (Google's commercial use of users' responses). Finally, contrary to Google's argument, Plaintiff has lost money or property as required for a UCL claim. Google obtained Plaintiff's unpaid labor for Google's commercial purposes without compensation; the value of Plaintiff's time and labor is sufficient to establish a "loss of money or property."

**The CLRA Claim.** As to Plaintiff's CLRA claim, Google's arguments that Plaintiff fails to plead reliance or economic injury fail for the same reasons as they do with respect to Plaintiff's UCL claim. Google's additional arguments specific to Plaintiff's CLRA claim likewise lack merit.

**First**, contrary to Google's argument, Gmail and Google's other services may be considered either "goods" or "services" as required for the CLRA to apply.

**Second**, Google's argument that Plaintiff failed to comply with CLRA procedural requirements—pre-suit notice and an affidavit attesting to venue—ignore important case history. Plaintiff **did** serve a pre-suit notice that complies with the CLRA. Although the notice did not specifically reference the CLRA, this was because Plaintiff originally sued under Massachusetts' consumer protection law, and nothing in the CLRA requires that a demand specifically invoke

1   the CLRA. Likewise, the requirement of a pre-suit affidavit attesting to a correct venue is not

2   germane here, where Plaintiff did not commence this action in this Court, but instead, Google

3   moved for and obtained transfer to this Court. Plaintiff's failure to aver the propriety of a venue

4   disputes does not require dismissal of her claims.

5       ***Quasi-Contract.*** Finally, Plaintiff states a claim for quasi-contract. Google's sole

6   argument for dismissal is that a contract governs the "subject matter" of Plaintiff's claims. But

7   the only "contract" to which Google cites is Google's Terms of Service. That document does not

8   reference reCAPTCHA, nor does it purport to govern the parties' rights with respect to

9   Plaintiff's response to reCAPTCHA prompts. Google's Terms of Service state that additional

10  services have "additional terms for particular Services," which may "conflict [with] these terms,"

11  yet Google has not produced any additional agreement that governs the parties' rights for the

12  "particular" reCAPTCHA service. Because there is no contract governing the subject matter of

13  Plaintiff's claim, the quasi-contract claim should proceed.

14      In short, none of Google's scattershot arguments for dismissal has merit. The Court

15  should deny Google's motion in its entirety.

16                          **STATEMENT OF FACTS**

17      A.   ***CAPTCHAs and Google's reCAPTCHA.***

18      A "CAPTCHA" is a website security feature that requires a website user, before

19  accessing a website or certain features of a website, to interpret and enter letters and/or numbers

20  that are displayed to the user in a distorted image (hereafter, "a distorted image"). (CAPTHCA is

21  an acronym for "Completely Automated Public Turing test to tell Humans and Computers

22  Apart."). Am. Compl. ¶ 13, ECF No. 49. The purpose of a CAPTCHA is to ensure that a website

23  user is a human being and not an automated program. *Id.* ¶ 14.

24      Google's CAPTCHA platform, "reCAPTCHA," is the dominant CAPTCHA provider

25  and has been widely used on popular websites including Facebook, Twitter, TicketMaster, CNN,

26  and CraigsList, as well as on Google's own websites such as Gmail. *Id.* ¶ 16. Although most

27  CAPTCHAs require that a user decipher and enter only one distorted image, Google's

28

reCAPTCHA platform is unique in that it often requires users to enter two separate distorted images in order to proceed past the reCAPTCHA prompt. *Id.* ¶¶ 17, 18. Google's requirement that a user decipher two separate images serves no security purpose. *Id.* ¶ 19. Rather, the second distorted image that a user must decipher is an image of a text such as in a book that Google is attempting to digitize by an automated process so that Google can profit from the transcription. *Id.* In short, Google uses the second distorted image in the reCAPTCHA prompts to obtain free transcription labor from website users. *Id.* ¶¶ 6, 29. Google then either sells the transcriptions to third parties or uses them for its own commercial purposes. For example, Google has used its reCAPTCHA platform to digitize scanned images of books and newspapers, including archived editions of *The New York Times*, and to decipher addresses found in images captured as part of Google's Street View project. *Id.* ¶¶ 20, 24, 25, 26.

Google claims (without citation) that it offers certain of its digitization projects that rely on reCAPTCHA prompts "for free" to internet users. *See* Google Mem. at 3. Google does not deny (nor could it on a motion to dismiss) that it profits from the ability to decipher an image correctly based on the input of people who decipher the second image in the reCAPTCHA prompt. Moreover, Plaintiff alleges Google profits even from such "free" services in multiple ways. As to the Google Books project that Google describes as "free," Google presents links through its Google Books website to purchase such "free" books. Am. Compl. ¶¶ 25, 26.

Although Google derives substantial profits from the transcriptions generated by users of websites that employ reCAPTCHA, Google does not disclose to website users that Google is profiting from their time and effort. *Id.* ¶ 27. Nor does Google compensate website users for their time and effort in transcribing distorted images. *Id.* ¶ 28. Google, in essence, operates a highly profitable transcription business built in part upon free labor, which it deceptively and unfairly obtains from websites users.

## B.   *Plaintiff's Response to a reCAPTCHA Prompt.*

In August 2014, Plaintiff accessed a Google website for the purpose of creating a new Gmail account through Google's Gmail service, http://www.gmail.com. *Id.* ¶ 8. As a condition to

PL.'S OPP TO MOT. TO DISMISS AM. COMPL. – CASE NO. 3:15-CV-03751-JSC

creating a new Gmail account, Google required Plaintiff to respond to a reCAPTCHA prompt by entering her interpretation of two distorted images that were displayed on the website. *Id.* The Gmail registration prompt directs the user that the purpose of this prompt is to "Prove you're not a robot." Liu Decl. Ex. A, Dkt. No. 52-2. That is, the stated purpose of the prompt is to prevent automated machines (as opposed to humans) from completing the Gmail registration process. The prompt does not disclose, or even hint, that Google uses the user's input to the reCAPTCHA prompt as part of Google's efforts to transcribe texts for Google's own commercial purposes.

### C.   *Procedural History.*

After sending Google a pre-suit demand (which Google ignored), Plaintiff filed her initial complaint in the District of Massachusetts on January 22, 2015. *See* Declaration of Patrick J. Vallely ("Vallely Decl."). Google moved to dismiss, or in the alternative to transfer, arguing, among other things, that Google's Terms of Service required Plaintiff (i) to assert claims under California's consumer protection laws, rather than Chapter 93A; and (ii) to bring any such claims in this Court, rather than the District of Massachusetts. *See* Dkt. Nos. 13, 19-1. Plaintiff contended in opposition (and still contends) that her Chapter 93A claim was proper and that venue was proper in Massachusetts. *See* Dkt. No. 18. The District of Massachusetts ruled in Google's favor on venue but did not decide whether Plaintiff may assert a claim under Chapter 93A. Dkt. No. 31. The case was transferred to this Court.

Following transfer, Plaintiff amended her complaint to assert claims on behalf of a nationwide class under the UCL and CLRA based on Google's contention that California consumer protection law applies to all individuals, regardless of where they reside, who responded to a reCAPTCHA prompt as part of their use of a Google service such as Gmail. *See* Am. Compl. ¶¶ 32, 49–69. Plaintiff continues to assert her Chapter 93A claim on behalf of Massachusetts residents, *id.* ¶¶ 31, 42–48, and a claim for quasi-contract/unjust enrichment on behalf of the nationwide class, *id.* ¶¶ 70–75.

1

## ARGUMENT

2

### I.   GOOGLE CANNOT AVOID CHAPTER 93A LIABILITY TO MASSACHUSETTS CONSUMERS THROUGH A CONTRACTUAL WAIVER.

3        Google's sole argument for dismissal of Plaintiff's Chapter 93A claim is that Plaintiff

4   waived such a claim by agreeing to Google's Terms of Service, which select California law to

5   govern her claims. Google's Mem. 4–6. On the contrary, the enforcement of the choice-of-law

6   clause to preclude Plaintiff—a Massachusetts resident—from asserting a Chapter 93A claim

7   would operate as an impermissible waiver of the claim.

8        Chapter 93A contains two distinct sections authorizing private enforcement of its

9   prohibitions on unfair and deceptive practices. Section 11 of Chapter 93A authorizes "[a]ny

10  person who engages in the conduct of any trade or commerce" to bring suit under Chapter 93A.

11  Mass. Gen. Laws ch. 93A § 11. That is, the section permits claims that concern "commercial"

12  transactions between businesses, rather than consumer claims. *See Linkage Corp. v. Trs. of Bos.*

13  *Univ.*, 679 N.E.2d 191, 206–09 (Mass. 1997). Section 9 of Chapter 93A provides "civil remedies

14  for consumers"; *see also Aspinall v. Philip Morris Cos.*, 813 N.E.2d 476, 485 (Mass. 2004)

15  (Section 9 designed to address "a pressing need for an effective private remedy for consumers").

16       The Massachusetts Supreme Judicial Court has held that consumer claims under Section

17  9 are not waivable. *Canal Elec. Co. v. Westinghouse Elec. Corp.*, 548 N.E.2d 182, 187 (Mass.

18  1990). The Court explained that because "[a] statutory right may not be disclaimed if the waiver

19  could do violence to the public policy underlying the legislative enactment," it "ordinarily would

20  not effectuate *a consumer's* waiver of rights under c. 93A." *Id.* (emphasis added).

21       Following the Supreme Judicial Court's lead, courts have consistently held that

22  contractual waivers of consumers' rights under Chapter 93A are unenforceable because such

23  waivers violate Massachusetts public policy. For example, in *Anderson v. Comcast Corp.*, 500

24  F.3d 66, 69, 76 (1st Cir. 2007), a contract with Comcast required a consumer to bring any claims

25  against Comcast within one year of injury—shorter than the four-year statute of limitations

26  applicable to claims under Chapter 93A. The court denied enforcement of that provision,

27  emphasizing the importance of the fact that the plaintiff was a consumer:

28

> The distinction between commercial and consumer claims is important in many contexts. Indeed, § 9 was adopted in 1969 to provide an effective private remedy to consumers…; § 11 was adopted in 1972, in part to eliminate anticompetitive activity…. Given their different origins and purposes, what is waivable under one section might not be waivable under the other.

*Id.* at 76. Relying on the Massachusetts Supreme Judicial Court's holding in *Canal Electric* that it "ordinarily would not effectuate *a consumer's* waiver of rights" under Chapter 93A, the First Circuit confirmed "that waiver of statutory remedies will not be allowed *in situations involving a consumer plaintiff* and/or antitrust claims." *Id.* at 76–77 (emphasis added) (quotation omitted). The First Circuit thus found that the contractual provision shortening the limitations period for the plaintiff's claims was an unenforceable waiver of the plaintiff's rights under Chapter 93A. *Id.* at 77; *see also Doe v. Cultural Care, Inc.*, No. 10-11426, 2011 U.S. Dist. LEXIS 28226, *25 (D. Mass. Mar. 17, 2011) ("Courts applying Massachusetts law have more than suggested that enforcing a waiver of a consumer plaintiff's claim under a statute such as c. 93A would be contrary to public policy."); *Elsesser v. Sleek, Inc.*, No. SUCV2011-03509B, 2012 Mass. Super. LEXIS 193, *10 (Super. Ct. May 25, 2012) ("[T]he putative release cannot bar [plaintiff's] c. 93A claim.").

Google's argument here would create an even broader waiver than in *Anderson*; rather than merely limiting the time within which Plaintiff could bring her claim, Google argues that Plaintiff may not bring a Chapter 93A claim *at all*. The consequences of waiver are particularly severe in this case, given that Google seeks dismissal of Plaintiff's UCL and CLRA based upon standing requirements particular to those statutes—for example, the requirement that a plaintiff "lost money or property," which is not a requirement under Chapter 93A. *See* Mass. Gen. Laws ch. 93A (requiring only that plaintiff have been "injured" by defendant's "act or practice").

Google's only response is to point to two cases in which courts have enforced choice-of-law clauses to preclude *non-consumer* plaintiffs from bringing claims under Chapter 93A. In *ePresence, Inc. v. Evolve Software, Inc.*, 190 F. Supp. 2d 159 (D. Mass. 2002), although the decision did not explicitly identify the section of Chapter 93A the plaintiff invoked, the dispute was a commercial dispute between two businesses concerning a software license agreement, *id.*

at 161; it was plainly not a consumer dispute under Section 9. The court did not even address the Supreme Judicial Court's decision under *Canal Electric*, which is a rule against waiver unique to consumer claims under Section 9 and not applicable under Section 11. Google's other authority—*Greentree Software, Inc. v. Delrina Tech., Inc.*, is even further afield. That case, like *ePresence*, involved a dispute between businesses over a negotiated software agreement, and the court explicitly noted that the claim was a Section 11 commercial claim, not a Section 9 consumer claim. No. 95-20799, 1996 U.S. Dist. LEXIS 22961, *1–3 (N.D. Cal. Apr. 10, 1996).

In short, waivers of consumer claims under Section 9 of Chapter 93A are not permissible. The Court should deny Google's motion to dismiss Plaintiff's Chapter 93A claim.

## II.    PLAINTIFF STATES A CLAIM UNDER THE UCL.

### A.    *Plaintiff Pleads Unlawful, Unfair, and Deceptive Acts.*

The UCL creates a cause of action for any "unlawful, unfair or fraudulent business act or practice." Cal. Civ. Code § 17200. As the Ninth Circuit has explained, the statute has a very broad scope:

> [The UCL's] coverage has been described as sweeping, embracing anything that can properly be called a business practice and at the same time is forbidden by law. A practice may be deemed unfair even if not specifically proscribed by some other law. The statute prohibits wrongful business conduct in whatever context such activity might occur. The standard is intentionally broad and allows courts maximum discretion to prohibit new schemes to defraud.

*In re First Alliance Mortg. Co.*, 471 F.3d 977, 995 (9th Cir. 2006) (quotations and citations omitted).

Although Google lumps together Plaintiff's theories of liability in an attempt to recast Plaintiff's allegations as sounding entirely in fraud (for reasons described below), Plaintiff pleads actionable unfair conduct independent of any misrepresentations or material omissions. Plaintiff's UCL claim should go forward.

### 1.    Plaintiff Pleads Unlawful Acts.

As to the "unlawful" prong of the UCL, Plaintiff sets forth in her Amended Complaint and explains in this memorandum her allegations of violations of the CLRA, as well as Chapter

1  93A, which provide the predicate "unlawful" acts to state a claim under the UCL. *See* Am.

2  Compl. ¶¶ 42–62. *Paulus v. Bob Lynch Ford, Inc.*, 139 Cal. App. 4th 659, 663 (2006) ("Virtually

3  any law or regulation — federal or state, statutory or common law — can serve as a predicate for

4  a [Business and Professions Code section] 17200 'unlawful' violation.").

5            2.     <u>Plaintiff Pleads Unfair Acts.</u>

6          Plaintiff sufficiently pleads actionable unfair acts. A practice is unfair if it violates a

7  public policy tied to a specific statutory provision. *See In re Carrier IQ, Inc. Consumer Privacy*

8  *Litig.*, 78 F. Supp. 3d 1051, 1116 (N.D. Cal. Jan. 21, 2015). Plaintiff specifically points in her

9  complaint to California's minimum wage and unpaid wages laws, which embody a public policy

10  that people should be paid for work they perform. Am. Compl. ¶ 67 (citing Cal. Lab. Code §

11  1182.12, and Cal. Lab. Code § 200).

12          Google's failure to compensate website users for its appropriation of their labor is an

13  unfair act regardless of whether Google made (or Plaintiff pleads) a misrepresentation or

14  omission. *See Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 173–78 (2000)

15  (failure to pay wages is actionable under the UCL).

16          Similarly, in *Fraley v. Facebook, Inc.*, the plaintiff alleged that Facebook failed to

17  compensate users for attaching their names to product advertisements within Facebook based on

18  the user's having "liked" the company that makes the advertised product. 830 F. Supp. 2d 785,

19  791–92 (N.D. Cal. 2011). The court held that the plaintiffs stated a claim under the UCL based

20  upon Facebook's having "knowingly and intentionally fail[ed] to seek and acquire members'

21  informed consent" regarding this practice. *Id.* at 814. The same is true here: Google did not

22  obtain website users' informed consent to Google's use of their labor for Google's commercial

23  purposes, which was an unfair practice.

24          Furthermore, a practice is unfair if the harm to the plaintiff outweighs the utility of the

25  defendant's conduct. *Carrier IQ*, 78 F. Supp. 3d at 1115. Google attempts to rebrand

26  reCAPTCHA as a "socially beneficial" use of its users' labor, Google Mem. at 3, but the

27  question is not whether Google's profit derived from website users outweighs the value of users'

28

1   time and labor. Google could have hired workers to transcribe texts; nothing required Google to

2   take advantage of users of the reCAPTCHA program. In such circumstances, Google's extraction

3   of free labor from its users is a harm that outweighs Google's interests in maximizing profit,

4   particularly given California's public policy favoring payment for working time.

5                    3.      Plaintiff Pleads Deceptive Acts.

6           Google's argument that Plaintiff fails to "identify any misrepresentation Google made to

7   her," Google Mem. at 8, is misplaced. The thrust of Plaintiff's complaint is that Google had a

8   duty to disclose the full truth of the purpose of the reCAPTCHA prompt, including Google's

9   profiting from users' unpaid labor. Google mounts no credible argument that would excuse it

10  from a duty to disclose the information it omitted. Google addresses Plaintiff's omission

11  allegations only in a passing footnote. Google Mem. 8 n.6. Google simply states summarily that

12  "there are no facts pled that would create a duty to" disclose. *Id.* Google is incorrect.

13          "[A] failure to disclose can constitute actionable fraud…(2) when the defendant had

14  exclusive knowledge of material facts not known to the plaintiff; …and (4) when the defendant

15  makes partial representations but also suppresses some material fact." *Wilson v. Hewlett-Packard*

16  *Co.*, 668 F.3d 1136, 1142 (9th Cir. 2012) (citation omitted). Plaintiff alleges each of these bases

17  for a duty to disclose. Am. Compl. ¶ 54.

18          The relevant reCAPTCHA prompt directed the user to "Prove you're not a robot,"

19  reinforcing website users' common understanding of the security purpose of a CAPTCHA. *See*

20  Am. Compl. ¶ 2. The statement, "Prove you're not a robot," is at minimum a "partial

21  representation" that also "suppresses some material fact"—Google's commercial purposes

22  behind the prompt.[2] *Wilson*, 668 F.3d at 1142; *see also LiMandri v. Judkins*, 52 Cal. App. 4th

23

24  [2] In its brief, Google ignores what is undisputed to be the version of the reCAPTCHA prompt
    used on Google's sign-up page, pointing instead to a different version of the prompt Plaintiff
25  provided by way of example in her complaint, in which the phrase "Stop Spam. Read Books" is
    displayed. Google Mem. at 8. The same prompt, however, stated that the reCAPTCHA was
26  "necessary to prevent automated signups," without referring to any commercial use Google
    would make of the user's responses. Am. Compl. ¶¶ 18–19. The vague statement, "Read Books,"
27  does not at all correct the misleading nature of Google's own description of the security purpose
    for the reCAPTCHA prompt.

28

1 | 326 (1997) (holding that nondisclosure or concealment may constitute actionable fraud when the
2 | defendant makes partial representations but also suppresses some material facts); *Roddenberry v.*
3 | *Roddenberry*, 44 Cal. App. 4th 634, 666 (1996) ("[A] nondisclosure claim arises when the
4 | defendant makes representations but fails to disclose additional facts which materially qualify the
5 | facts disclosed, or which render the disclosure likely to mislead.").

6 |     Google claims that it disclosed the commercial purpose of the reCAPTCHA prompt
7 | through its Privacy Policy. That Privacy Policy, however, discloses only that Google "use[s] the
8 | information [it] collect[s] from all of our services to provide, maintain, protect and improve
9 | them…." Liu Decl. Ex. C at 2. That statement does not come close to any sort of disclosure that
10 | Google profits from users' responses. And, Google does not even attempt to explain how a user
11 | would find the Privacy Policy, much less why a user would have a reason to try to find and read
12 | it. Unlike the "Prove you're not a robot" statement, which Google presents prominently in the
13 | reCAPTCHA prompt itself, the Privacy Policy is buried through a series of links that an ordinary
14 | user would have no reason to follow.

15 |     Google mounts no argument as to Plaintiff's allegation of Google's "exclusive
16 | knowledge" of the true nature of the reCAPTCHA prompt. As to Google's "exclusive
17 | knowledge," even if Google, somewhere other than the Google registration page, discussed the
18 | commercial purpose behind the reCAPTCHA prompt, customers cannot "be expected to seek
19 | facts which they h[ave] no way of knowing exist[]." *In re Toyota Motor Corp. Unintended*
20 | *Acceleration Mktg., Sales Practices & Products Liab. Litig.*, 754 F. Supp. 2d 1208, 1227–28
21 | (C.D. Cal. 2010). Website users had no duty to investigate for themselves the true purpose for
22 | the prompt, particularly given Google's deceptive direction to users to "Prove you're not a
23 | robot."

24 |     **B.**    *Plaintiff's Allegations of Misrepresentations Comply with Rule 9(b).*

25 |     Google argues that Plaintiff's entire UCL claim is subject to Rule 9(b). But, in a case
26 | "[w]here fraud is not an essential element of a claim, only those allegations of a complaint which
27 | aver fraud are subject to Rule 9(b)'s heightened pleading standard…. To the extent a party does

28 |

not aver fraud, the party's allegations need only satisfy the requirements of Rule 8(a)(2)." *Kearns v. Ford Motor Co.*, 567 F. 3d 1120, 1124–25 (9th Cir. 2009). Here, Plaintiff pleads theories of liability to which Rule 9(b) does not apply. As explained above, Plaintiff pleads that Google's conduct in appropriating website users' labor without compensating them is unfair, with or without Google's accompanying misrepresentations. The same is true with Plaintiff's allegation that Google's conduct is unfair because harm to users outweighs any utility.

Furthermore, Plaintiff's principal argument is that Google failed to disclose the commercial purpose for which it required users to respond to a reCAPTCHA prompt—an omission theory of liability to which Rule 9(b) does not apply. *See Graebner v. James*, 2012 U.S. Dist. LEXIS 175508, *12 (N.D. Cal. Dec. 11, 2012) (citing *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1099 (N.D. Cal. 2007)) (a fraud by omission claim is not required to meet the heightened pleading standard under Rule 9(b)). As one court recently explained:

> While claims that sound in fraud must usually be pled with particularity, Fed. R. Civ. P. 9(b), when a fraud claim is based on an alleged omission, the claim can succeed without the same level of specificity required by a normal fraud claim. This is because a plaintiff alleging an omission-based fraud will not be able to specify the time, place, and specific content of an omission as would a plaintiff in a false representation claim.

*Digby Adler Grp., LLC v. Mercedes-Benz U.S.A., LLC*, 2015 U.S. Dist. LEXIS 116427, *7–8 (N.D. Cal. Sept. 1, 2015) (quotations omitted).

In any event, Plaintiff pleads the misrepresentations with the requisite particularity. Rule 9(b) simply requires that the circumstances constituting the alleged fraud "be specific enough to give defendants notice of the particular misconduct…so that they can defend against the charge and not just deny that they have done anything wrong…"; that is, Plaintiff must plead "the who, what, when, where, and how" of the misrepresentations. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quotations omitted). Plaintiff's allegations meet this standard. The complaint alleges that Google made partial and misleading misrepresentations concerning the purpose of the reCAPTCHA prompt to website users such as Plaintiff. Am. Compl. ¶¶ 14, 27, 53, 54. Plaintiff alleges specifically how those statements were misleading—that is, by failing to

1    disclose Google's secondary commercial purpose in requiring users to respond to a reCAPTCHA

2    prompt. *Id.* ¶¶ 53, 54.Plaintiff has pled more than sufficient facts to give Google "notice of the

3    particular misconduct" that Plaintiff alleges.

4
     **C.    *Plaintiff is Entitled to an Inference of Reliance as to Plaintiff's Allegations of***
5          ***Misrepresentations and Omissions.***

6        Google contends that the Court should dismiss Plaintiff's UCL claim because Plaintiff

7    fails to plead reliance on any misrepresentation. Google Mem. 11–12. Google's own authority

8    confirms that reliance is only a required element for a UCL claim if a plaintiff's "claims are

9    premised on misrepresentations." *Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1048 (N.D. Cal.

10   2014). As explained above, Plaintiff states a UCL claim even without any misrepresentation.

11   Plaintiff alleges Google engaged in an unfair practice by extracting value from website users'

12   unpaid labor, in violation of California public policy against nonpayment of wages. Plaintiff's

13   claim under the "unfair" prong of the UCL therefore does not depend on any misrepresentation.

14       Even if Plaintiff had an obligation to plead reliance upon Google's misleading and

15   incomplete disclosure of the purpose of the reCAPTCHA prompt, Plaintiff is entitled to an

16   inference of reliance. In *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 229–30 (2013), the court

17   concluded that for purposes of the UCL (and CLRA) "actual reliance, or causation, is inferred

18   from the misrepresentation of a material fact." In *Chapman*, the plaintiff alleged the defendant

19   misrepresented that its monthly telephone calling plan was unlimited when it was not. The word

20   "unlimited" in the plan description was followed by a footnote designator; the footnote stated a

21   fair usage policy applied. On another page, the fair usage policy indicated the plan had time

22   limits on daily and monthly calls. When she purchased a subscription to the calling plan, <u>the</u>

23   <u>plaintiff did not notice the footnote</u>. *Id*. at 223. The appellate court concluded the plaintiff

24   adequately alleged a misrepresentation of fact, based on the use of the term "unlimited" to

25   describe calling plans that were not unlimited. The court reasoned:

26       To satisfy the requirement of pleading actual reliance, or causation…, a plaintiff
         need only allege a misrepresentation of a material fact. The materiality of a
27       misrepresentation is generally a question of fact unless the misrepresentation was

28

so obviously unimportant that the trier of fact could not reasonably conclude that a reasonable person would have been influenced by it. . . .

In our view, the materiality of Skype's alleged representation that the calling plans were "Unlimited" is a question of fact that cannot be decided as a question of law on this record. We therefore conclude that by alleging a material misrepresentation Chapman adequately alleges actual reliance for purposes of the UCL and the false advertising law.

*Id.* at 220, 229-30; *see also Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 327 (2011) (holding that the complaint adequately alleges reliance where "from its allegations one could infer the plaintiff had relied on a defendant's representation"); *Morales v. Unilever U.S., Inc.*, No. 2:13-2213, 2014 U.S. Dist. LEXIS 49336, *10 (E.D. Apr. 9, 2014) (denying motion to dismiss UCL claim grounded in CLRA and holding that "[e]ven if defendant were correct that plaintiffs have not alleged that they relied upon any particular representation or aspect of the product label, plaintiffs have sufficiently alleged that the product labels contained material misrepresentations."); *Bruton v. Gerber Prods. Co.*, 961 F. Supp. 2d 1062, 1089 (N.D. Cal. 2013) (holding that plaintiff sufficiently alleged that defendant's health claims and nutrient content claims were material based on allegations about consumer behavior and consumers' understanding of product labels); *Figy v. Amy's Kitchen, Inc.*, No. CV 13-03816 SI, 2013 U.S. Dist. LEXIS 167723, *13 (N.D. Cal. Nov. 25, 2013) (holding that "there may be an inference of reliance upon a showing of materiality" so long as the plaintiff "saw the representation at issue").

Furthermore, the purpose behind the "reliance" requirement is plainly served here. The "reliance" requirement stems from the UCL's requirement that a plaintiff must have suffered injury "as a result of" the defendant's conduct. *See* Cal. Bus. & Prof. Code § 17204. As the California Supreme Court explained, Proposition 64, which created what courts now sometimes refer to as a "reliance" requirement, was intended to curb abuses of the UCL in which attorneys would "fil[e] lawsuits for unfair competition where they have no client who has been injured," but not to "curb the broad remedial purpose of the UCL…." *In re Tobacco II Cases*, 46 Cal. 4th 298, 316–17 (2009). Plaintiff here has been injured. Google deceptively directed her to prove that she was "not a robot," and then when she complied, Google appropriated her labor for its

own commercial use. Plaintiff's injury was plainly "as a result" of Google's conduct. Cal. Bus. & Prof. Code § 17204.

Here, Google's misleading direction to users to "Prove [the website user is] not a robot" was designed to and did induce website users to respond to the reCAPTCHA prompt, including the second word presented solely for Google's commercial purposes. It is apparent, given the facts of this case, that had Google not directed users to prove they are not robots, they would not have done so. This is in contrast to typical consumer deception cases, in which there may be a real question as to whether the plaintiff actually saw a misrepresentation about a product. Here, the proof is obvious: Plaintiff responded to the reCAPTCHA prompt; she would not have responded had Google not deceptive directed her to do so. That is, reliance and causation are apparent from the facts of this case.

### D.   *Plaintiff Alleges a Loss of Money and Property.*

Google's next argument for dismissal of Plaintiff's UCL claim is that Plaintiff fails to allege a "loss of money or property." Google Mem. 12. Google's argument is based on the premise that its services were "free," ignoring the value Plaintiff and other website users have provided to Google by responding to the reCAPTCHA prompt.

The fact that Plaintiff did not pay Google directly for the services it provided does not preclude a finding that Plaintiff "lost money or property." Under the UCL, "[t]here are innumerable ways in which economic injury from unfair competition may be shown." *Kwikset*, 51 Cal. 4th at 323. In addition to a consumer paying money for a good or service, a plaintiff may state a UCL claim by alleging that she has "surrender[ed] in a transaction more, or acquire[d] in a transaction less, than he or she otherwise would have" or has been "deprived of money or property to which he or she has a cognizable claim." *Id.* Here, Plaintiff surrendered more in the reCAPTCHA transaction (i.e., additional time and labor) than she would have surrendered had Google not required that she decipher a second image for Google's commercial purposes. And, Plaintiff has been deprived of money to which she has a cognizable claim—specifically, payment for the labor she provided to Google for Google's benefit. The California Supreme Court has

1   confirmed that "unlawfully withheld wages are property…within the contemplation of the UCL,"

2   to which a plaintiff has a cognizable claim. *Cortez*, 23 Cal. 4th at 177–78.

3          The decision in *Fraley*, discussed above, is directly on point. There, Facebook argued

4   that because it provided a "free service," the plaintiffs could not have lost "money or property"

5   as required by the UCL. 830 F. Supp. 2d at 811. The court rejected this argument, holding that

6   "Facebook's failure to compensate [the plaintiffs] for their valuable endorsements of third-party

7   products" constitutes a "loss of money or property sufficient to state a claim under the UCL." *Id.*

8   at 811–12. Plaintiff's claim here is nearly identical: Google failed to compensate website users

9   for their valuable transcription services. This is sufficient to establish a loss of money or

10  property.

11         Similarly, in a case ***against Google*** relating to the collection of personal identifying

12  information through free smartphone apps, the court held that the plaintiff adequately alleged a

13  loss of money or property based on his allegation of reduced smartphone battery life caused by

14  Google's unfair conduct. *In re Google Android Consumer Privacy Litig.*, No. 11-md-02264,

15  2014 U.S. Dist. LEXIS 31430, *16–17 (N.D. Cal. Mar. 10, 2014). The court explained,

16  "[a]lthough Plaintiffs do not allege facts that show they paid money directly to Google, the Court

17  cannot conclude that Plaintiffs might not be able to show an ownership interest in at least some

18  of Google's profits." *Id.* at *22; *see also Yunker v. Pandora Media, Inc.*, No. 11-cv-03113, 2014

19  U.S. Dist. LEXIS 30829, *2–3, 12–13 (N.D. Cal. Mar. 10, 2014) (the fact that some plaintiffs did

20  not pay for Pandora online radio service did not preclude them from asserting UCL claim based

21  on unauthorized commercial use of personal information); *Infostream Group, Inc. v. Paypal,*

22  *Inc.*, No. C 12-748, 2012 U.S. Dist. LEXIS 122255, *34 (N.D. Cal. Aug. 28, 2012) (defendant's

23  conduct leading to plaintiff's "loss of business" sufficient to establish plaintiff "lost money or

24  property" required for UCL standing even though plaintiff paid nothing to defendant).

25  **III.    PLAINTIFF STATES A CLAIM UNDER THE CLRA.**

26         Google similarly presents an array of arguments for dismissal of Plaintiff's CLRA claim.

27  None has merit.

28

**A.      *Gmail Is Both a Good and a Service Under the CLRA.***

Google's first argument is that the CLRA does not apply to software. The CLRA, by its terms, is limited to "transactions" involving "goods or services." Cal. Civ. Code § 1770(a). The CLRA defines the word "goods" as "tangible chattels." Cal. Civ. Code § 1761. Some courts (as Google identifies in its brief) have held that software is not a "tangible chattel" because the software code itself is not "tangible," and therefore, software is not a "good" to which the CLRA applies. There is, however, a split of authority on this issue, with some courts adhering to the CLRA's instruction that the CLRA must be "liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economic procedures to secure such protection." Cal. Civ. Code § 1760. For example, one court explained in ruling that software was a "good" subject to the CLRA why the crabbed view of the word "good" some courts have taken is mistaken:

> The "tangible chattels" language in the CLRA's definitions dates from 1970…. It seems unlikely that the Legislature knowingly exempted computer software from the CLRA's scope two years before the invention of Pong. More probability, the purpose of the language was to exempt commodities such as credit or insurance from the CLRA's scope, since those commodities are inherently intangible promises which have no direct and concrete impact on the physical universe.

*Haskins v. Symantec Corp.*, No. 13-cv-01834, 2013 U.S. Dist. LEXIS 169865, *28–29 (N.D. Cal. Dec. 1, 2013). Other courts have likewise interpreted the CLRA to cover software. *Perrine v. Sega of Am., Inc.*, No. C 13-01962, 2013 U.S. Dist. LEXIS 173311, *12 (N.D. Cal. Oct. 3, 2013) ("[I]n certain circumstances, computer programs and software may be considered tangible goods or tangible personal property."); *Ladore v. Sony Computer Entm't Am., LLC*, 75 F. Supp. 3d 1065, 1073–74 (N.D. Cal. 2014) (holding that videogame software was a "good" under the CLRA). Plaintiff submits that the better reasoned authorities include software within the scope of the CLRA.

Alternatively, Gmail could be considered a "service" to which the CLRA applies. The CLRA defines "service" somewhat circularly as "work, labor, and services for other than a commercial or business use." Cal. Civ. Code § 1761. When a website user uses Gmail, Google

and the website user enter an ongoing relationship in which Gmail provides what can be described only as "services" to the website user—including data storage, organization, and provision of access to the user's emails.[3]

Google, in fact, has admitted—repeatedly, in this case—that Gmail is a "service." The entire premise of Google's motion that resulted in the transfer of this case to this Court was that Google's Terms of Service required "any disputes arising out of…the Services" to be governed by California law and decided in a California court. Dkt. No. 13 at 2. Like the CLRA, Google's Terms of Service did not afford the word "Service" a special meaning; rather, it defined "Service" circularly as Google's "products and services." Dkt. No. 13 at 2 n.1. In Google's briefing on that motion, it referred to Gmail as a "service" no fewer than eleven times. Dkt. No. 13 at 1, 2 & n.1, 5; Dkt. No. 19-1 at 1, 2, 3, 4 n.1, 5. Google, even in the present motion, refers repeatedly to Gmail as a "service." Google Mem. at 2, 3 & n.4. The District of Massachusetts, in granting Google's motion to transfer, expressly found that Gmail was a "service." Dkt. No. 31 at 7.

Plaintiff recognizes that some courts (cited by Google) have found that Google's online platforms are not "services" under the CLRA, but respectfully submits that, given the language of the statute and Google's admissions in this case, Gmail is a "service" under the CLRA and the CLRA should apply to it. *See also Hawthorne v. Umpqua Bank*, No. 11-cv-06700, 2013 U.S. Dist. LEXIS 153697, *33–35 (N.D. Cal. Oct. 25, 2013) (holding that debit cards provided by bank reflect a "service"; emphasizing that CLRA must be "'liberally construed'") (quoting Cal. Civ. Code § 1760).

---

[3] Google strangely attempts to characterize Gmail as a downloaded application, apparently to align it with cases it cites concerning distinct software products that a plaintiff either downloads or purchases at a store. *See* Google Mem. at 12 (discussing Plaintiff's decision to "download" the "Gmail application"). Gmail is not a distinct piece of software that a user downloads or buys in the store; rather Gmail is the name of Google's website through which Google stores, organizes, and provides access to email. Gmail is more fairly described as a "service" than traditional software would be.

1      **B.      *Plaintiff Identifies a Misrepresentation.***

2          Google argues that the Court should dismiss Plaintiff's CLRA claim because Plaintiff

3   fails to plead a misrepresentation. Google Mem. at 8. To the contrary, and as argued above,

4   Plaintiff adequately alleges actionable misrepresentations, including Google's statements to

5   consumers (such as "Prove you're not a robot") that misled them into believing that the

6   reCAPTCHA prompt was for a security purpose, rather than for Google's own commercial

7   purposes. *See* Argument §§ II-A-3, *supra.*

8      **C.      *Plaintiff Is Entitled to an Inference of Reliance.***

9          Google seeks dismissal of Plaintiff's CLRA claim on the ground that Plaintiff does not

10  plead reliance on any misrepresentation. Google Mem. at 9. The allegations of the Amended

11  Complaint are sufficient for the reasons set forth above with respect to Plaintiff's UCL claim,

12  including that (i) Plaintiff is entitled to an inference of reliance; and (ii) reliance is fairly inferred

13  from the nature of the misrepresentation here: that is, it is apparent that Plaintiff responded to the

14  reCAPTCHA prompt based on Google's misleading direction to "Prove you're not a robot." *See*

15  Argument §§ II-C, *supra*.

16
        **D.      *Plaintiff Entered Into a Transaction in Connection with Google's Gmail***
17              ***Service and Lost Money or Property from the Transaction.***

18         Google argues that Plaintiff fails to plead a "transaction...involving the sale or lease of

19  goods or services" as required by the CLRA, and that Plaintiff fails to allege that she "lost money

20  or property" in such a transaction. As with its arguments under the UCL, Google argues that

21  because its services are "free," Plaintiff cannot state a claim. Google Mem. at 9–10.

22         As to the requirement of a transaction involving "the sale or lease of goods or services,"

23  *see* Cal. Civ. Code § 1170(a), Plaintiff meets this requirement because she, in effect, paid for the

24  "services" Google provided to her with her labor. Google cites to cases in which courts have

25  rejected plaintiffs' argument that they paid for free software with their personal information

26  (which the companies monetized by selling to advertisers). Although superficially those

27  plaintiffs' arguments sound similar to the argument Plaintiff makes here (in both situations, the

28

plaintiff alleges payment with something other than money), the rationale of the cases Google cites is that personal identifying information is not "property" a consumer can use to "pay" for a service. *See, e.g. In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 714, 716–17 (N.D. Cal. 2011) ("A plaintiff's 'personal information' does not constitute property."). In contrast, the California Supreme Court has made clear that consumers have a "property" interest in their own time and labor. *Cortez*, 23 Cal. 4th at 177–78; *see also Fraley*, 830 F. Supp. 2d at 811–12 (plaintiff has "property" interest in their own likenesses). Therefore, Google's authorities involving personal information do not preclude a finding that Plaintiff purchased Google's services by providing labor to Google.

Furthermore, as to Google's argument that Plaintiff's CLRA claim fails because she did not lose "money or property," "the California Supreme Court [has] made clear that the CLRA's" requirement for economic injury is "a capacious one that includes any pecuniary damage ***as well as opportunity costs and transaction costs***...." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1108 (9th Cir. 2013) (emphasis added). Here, Google's failure to pay Plaintiff and other website users for their time and labor at a minimum reflects an opportunity cost to Plaintiff, and therefore, Plaintiff can state a claim under the CLRA.

Furthermore, "any plaintiff who has standing under the UCL's...'lost money or property' requirement will, *a fortiori*, have suffered [the requisite injury for] CLRA standing." *Id.* As argued above, there is substantial authority supporting Plaintiff's standing under the UCL, notwithstanding that Google is a purportedly "free" service. *See* Argument § II, *supra*. Therefore, because Plaintiff meets the injury requirement of the UCL, it follows that her CLRA claim should proceed as well.

**E.    *The CLRA's Procedural Requirements Pose No Barrier to Plaintiff's Claim.***

Google argues that the Court should dismiss Plaintiff's claim because she did not send "the required CLRA letter to Google" thirty days before her complaint "and she therefore fails to include the required declaration attesting to having done so." Google Mem. at 10–11. Google conflates two distinct provisions of the CLRA—one requiring pre-suit notice of a plaintiff's

claims, and another requiring an affidavit attesting that the case has been filed in the proper venue. In any event, neither provision mandates dismissal here.

First, as to the pre-suit demand requirement, the CLRA provides that "prior to the commencement of an action," a plaintiff must:

> (1) Notify the person alleged to have employed or committed methods, acts, or practices declared unlawful by Section 1770 of the particular alleged violations of Section 1770.
>
> (2) Demand that the person correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation of Section 1770.

Cal. Civ. Code § 1782(a). Prior to commencing this action in the District of Massachusetts, Plaintiff *did* send a pre-suit demand. Even though Plaintiff did not, at that time, bring a claim under the CLRA, Plaintiff sent the demand letter as required under Chapter 93A. More importantly, Plaintiff's demand letter met all the requirements of the CLRA. It specified, in detail, the "acts" and "practices" that Plaintiff contended were unlawful and demanded that Google correct the wrongs alleged. Although Plaintiff did not reference the CLRA in her demand letter, nothing in the CLRA requires that she do so.[4] The purpose of the statute—to give the alleged wrongdoer notice of the claim—was fully served by the demand letter that was sent prior to filing suit. Moreover, the CLRA's demand requirement should not be interpreted to require more in the circumstances of this case, where it was Google that demanded that Plaintiff bring her consumer protection claims under California law, rather than Massachusetts law.

Contrary to Google's argument, nothing in the CLRA requires that Plaintiff submit an affidavit certifying compliance with the pre-suit demand requirement. The affidavit requirement

---

[4] Google in a footnote argues, without citation, that the CLRA requires that the pre-suit demand letter must "identif[y]" the "particular section of the CLRA the defendant is alleged to have violated." Google Mem. 10 n.7. The statute contains no such requirement. Rather, it merely requires that the letter notify the recipients "of the particular alleged violations of Section 1770." Cal. Civ. Code § 1782(a). Plaintiff asserted in her letter that Google committed a "deceptive act" by failing to "disclose to website users that Google is profiting from their time and effort." Vallely Decl. Ex. A. This assertion put defendant on notice of the misrepresentations that now serve as the basis for Plaintiff's claim under the CLRA. Am. Comp. ¶¶ 51–54, 58–59.

referenced in the cases Google cites derives from another section of the CLRA, which requires that a complaint be "commenced in the county…where the transaction…occurred" or where venue is proper, and that the plaintiff certify compliance via affidavit filed at the "commencement" of the action (i.e., with Plaintiff's original complaint). Cal. Civ. Code § 1780(d). Literal compliance with the statute is not possible here because Plaintiff did not "commence" this action in this Court. Plaintiff commenced this action in the District of Massachusetts, and Google moved for transfer to this Court. Plaintiff opposed (and may appeal) the transfer. It would be irrational to interpret the CLRA to require Plaintiff to aver in an affidavit something that she has not done (filed in this Court), particularly given that she asserts that venue is proper in another court. Even were the Court to require Plaintiff to file such an affidavit, dismissal is not the proper remedy; rather, where a defendant does not dispute venue (as is obviously the case here, considering Google moved to transfer the case to this Court), courts permit the affidavit to be filed after commencement of the action. *Ladore*, 75 F. Supp. 3d at 1074.

## IV.   PLAINTIFF STATES A CLAIM FOR QUASI-CONTRACT.

Google's contention that Plaintiff has no claim for quasi-contract because a written contract—Google's Terms of Service—exists between Google and Plaintiff has no merit. Under California law, an "express contract" must "embrac[e] the same subject matter" as the "implied contract" to preclude a claim for quasi-contract. *Wal-Noon Corp. v. Hill*, 45 Cal. App. 3d 605, 613 (1975). Google's Terms of Service for the Gmail service do not embrace "the same subject matter" as the reCAPTCHA prompt, but even if they did, Google identifies no provision of the Terms of Service that governs the subject matter of the claim here—Google's unjust profiting from website users' unpaid labor through reCAPTCHA prompts.

Google attempts to invoke the transfer order to argue that Plaintiff's claims are "'plainly governed'" by the Google Terms of Service. Google Mem. at 13 (quoting Dkt. No. 31 at 7). The District of Massachusetts, however, expressly "decline[d] to rule" on Google's arguments for dismissal, including Google's argument that the Terms of Service preclude Plaintiff's claim. *See*

Dkt. No. 31 at 8. The court did *not* say that the Terms of Service govern the subject matter of Plaintiff's claims nor that any of Plaintiff's claims are "plainly governed" by the Terms of Service. Rather, the court held that "Plaintiff's claims are plainly governed by the *forum selection clause*." Dkt. 31 at 7.[5]

The Terms of Service say nothing about reCAPTCHA or Google's right (or lack thereof) to profit from Plaintiff's response to a reCAPTCHA prompt. Google's argument, apparently, is that because *some* contract exists between Plaintiff and Google, Plaintiff is precluded from bringing *any* claim against Google except for a claim that derives from the express terms of the contract. But, the problem is that the Terms of Service impose nearly no obligations on Google. Therefore, Google's argument is that Plaintiff has implicitly waived nearly every claim for any wrong Google may commit against her because the Terms of Service do not expressly enumerate Google's legal responsibilities. Google offers no support for such a broad, implied waiver of claims. And, this is why *Wal-Noon* makes clear that the mere existence of a contract between two parties does not preclude an unjust enrichment claim unless the contract governs the "subject matter" of the claim. 45 Cal. App. 3d at 613. The Google Terms of Service do not preclude Plaintiff's claim for quasi-contract.[6]

---

[5] Google references a provision of its terms of service that purports to limit Google's liability, in Google's words, to "zero." Google Mem. 13. Google does not attempt to invoke this clause as an independent basis for dismissal, and California law expressly prohibits such exculpatory provisions. *See* Cal. Civ. Code § 1668 ("All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law.").

[6] Google also argues that "[u]njust enrichment is not a cause of action under California law." Google Mem. at 12. The Ninth Circuit recently rejected this precise argument. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). Google's own authorities demonstrate that Google raises simply a matter of form rather than substance. In particular, *Durrell v. Sharp Healthcare*, indicates that even though "[t]here is no cause of action" that California courts call "unjust enrichment," California does have a cause of action for "quasi-contract." That cause of action provides that "an individual is required to make restitution if he or she is unjustly enriched at the expense of another," and "the circumstances are such that, as between the two individuals, it is *unjust* for the person to retain it." 183 Cal. App. 4th 1350, 1370–71 (Cal. Ct. App. 2010) (emphasis in original). In fact, this Court recently rejected this same argument *when Google itself pressed it*. *Imber-Gluck v. Google, Inc.*, No. 5:14-cv-01070, 2014 U.S. Dist. LEXIS 98899, *22–23 (N.D. Cal. July 21, 2014) (rejecting Google's argument that "unjust enrichment 'does

1   **V.      IN THE ALTERNATIVE, PLAINTIFF SEEKS LEAVE TO AMEND.**

2           In the event the Court finds that Plaintiff has failed to adequately plead any of her claims,

3   Plaintiff requests leave to amend to cure any such deficiency. *See* Fed. R. Civ. Proc. 15(a) (court

4   shall "freely give leave" to amend complaint). Although the current complaint is Plaintiff's

5   second complaint in this action, it is the first complaint in which she asserts claims under

6   California law. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1053 (9th Cir. 2003)

7   (reversing denial of leave to amend because although plaintiff had filed multiple complaints,

8   "plaintiffs had not filed…substantially similar complaints alleging substantially similar theories,"

9   and instead, plaintiff's amended complaint "included additional theories not previously

10  alleged").

11                              **<u>CONCLUSION</u>**

12          For the foregoing reasons, the Court should deny Google's motion to dismiss in its

13  entirety.

14

15  DATED: November 11, 2015                   /s/ Noah M. Schubert
                                               Robert C. Schubert (No. 62684)
16                                             Noah M. Schubert (No. 278696)
                                               SCHUBERT JONCKHEER & KOLBE LLP
17                                             Three Embarcadero Center, Suite 1650
                                               San Francisco, CA 94111
18                                             Telephone: (415) 788-4220
                                               Facsimile:  (415) 788-0161
19                                             rschubert@shubertlawfirm.com
                                               nschubert@schubertlawfirm.com
20

21                                             /s/ Patrick J. Vallely
                                               Thomas G. Shapiro, *Admitted pro hac vice*
22                                             Patrick J. Vallely, *Admitted pro hac vice*
                                               SHAPIRO HABER & URMY LLP
23                                             Seaport East

24   _____

25  not describe a theory of recovery' under California law"; pointing to recent Ninth Circuit and
    California authority affirming such a claim) (citing *Berger v. Home Depot USA, Inc.*, 741 F.3d
26  1061, 1070 (9th Cir. 2014) and other cases). In any event, Plaintiff expressly alleges a claim for
    quasi-contract and pleads the requisite facts to support such a claim. Am. Compl. ¶¶ 70–75.
27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Two Seaport Lane
Boston, MA 02210
Telephone: (617) 439-3939
tshapiro@shulaw.com
pvallely@shulaw.com

*Counsel for Plaintiff*