1

2

3

4

5

6

7                      UNITED STATES DISTRICT COURT

8                    NORTHERN DISTRICT OF CALIFORNIA

9

| | |
|---|---|
| GABRIELA ROJAS-LOZANO, Individually And On Behalf Of All Other Persons Similarly Situated, | Case No.  15-cv-03751-JSC |
| Plaintiff, | **ORDER GRANTING GOOGLE'S MOTION TO DISMISS UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM** |
| v. | |
| GOOGLE, INC., | Re: Dkt. No. 52 |
| Defendant. | |

        "CAPTCHAS," typically distorted words that website visitors are required to identify

before accessing certain internet services, are ubiquitous.  Their stated purpose is to ensure that the

website user is a human.  Google's reCAPTCHA program sometimes requires the user to

transcribe two words.  The first word serves the security purpose, but Google utilizes the user's

transcription of the second to assist with Google's digitalization of books; in effect, Google is

"crowd sourcing" the transcription of words that a computer cannot decipher.  This lawsuit alleges

that Google does so without disclosing this purpose to the human user.

        Now pending before the Court is Google's Motion to Dismiss Plaintiff's First Amended

Complaint ("FAC").  (Dkt. No. 52.)  The gravamen of the question presented is whether Google's

failure to disclose the true purpose of the user's transcription of the second word is unfair,

fraudulent or otherwise illegal. After carefully considering the parties' submissions, including

United States District Court
Northern District of California

their supplemental briefs, and having had the benefit of oral argument on December 10, 2015, the Court GRANTS the motion.[1]  The parties' choice of California law bars Plaintiff's Massachusetts claim, and the California state law claims fail as a matter of law.

### ALLEGATIONS OF THE COMPLAINT

Google, a Delaware corporation headquartered in Mountain View, California, earns some of its revenue from transcribing books, newspapers, photographs, and other images.  (FAC ¶ 5, 24.)  Some of these transcriptions are done for paying third parties such as the New York Times.  (*Id.*)  Some, Google uses for its own Google Books or Google Maps.  (*Id.* ¶¶ 5, 25-26.)  Google then profits from the ads displayed to users who visit Google Books or Google Maps.  (*Id.*)  To transcribe these texts, Google uses optical character recognition ("OCR") technology; however, OCR does not always capture all of the words or numbers in an image.  (*Id.* ¶ 21.)  Those missed characters require human review.  (*Id.*)

Instead of employing people to review those missed words, Google uses a program that already required users to view and transcribe distorted images: reCAPTCHA, Google's version of a Completely Automated Public Turing test to tell Computers and Humans Apart ("CAPTCHA").  (*Id.* ¶¶ 13, 16, 22.)  As the name suggests, CAPTCHAs are website security features that seek to distinguish humans visiting a website from automated programs.  CAPTCHAs make this distinction by presenting a website visitor with the distorted image of letters, numbers, or words that the user must then correctly transcribe into a box before proceeding to the website.  (*Id.* ¶¶ 13-14.)  A user may be asked to transcribe anything from "MY5N5," "6345262" or words like "Sample" or "Wills."  (*Id.* ¶¶ 18, 23, 26.)  The prompt may also tell users that completion of the prompt is "necessary to prevent automated signups" or to prove users are "not a robot."  (*Id.* ¶ 53.)  Humans are usually able to view the distorted images and recognize their contents: automated programs cannot.  (*Id.* ¶ 14.)  Google is the dominant provider of CAPTCHA technology, and reCAPTCHA customers include Facebook, TicketMaster, and Craigslist.  (*Id.* ¶ 16.)

While most CAPTCHA programs present only one word or phrase, reCAPTCHA sometimes requires users to transcribe two words.  (*Id.* ¶ 18.)  The first word in those prompts is

---

[1] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c).  (Dkt. Nos. 36, 42.)

known to Google and serves a security purpose.  (*Id.* ¶¶ 3, 19.)  The second word or phrase is one that Google's OCR technology failed to recognize and serves no security purpose.  (*Id.*)  The unknown word is presented to users multiple times until the responses all point to one transcription.  (*Id.* ¶¶ 22-23.)  Then, Google updates its transcription of the source.  (*Id.*)

Plaintiff, a Massachusetts resident, encountered a two word reCAPTCHA prompt in the process of signing up for a Gmail account in August 2014.  (*Id.* ¶ 8.)  She was "required . . . to respond."  (*Id.*)  The complaint does not detail what she saw when she completed the prompt or what she understood the purpose of the prompt to be.

## PROCEDURAL BACKGROUND

Plaintiff filed her complaint in the District of Massachusetts on January 22, 2015.  (Dkt. No. 1.)  Google responded with a motion to dismiss or transfer, relying on the Terms of Service Plaintiff accepted when signing up for her Gmail account.  (Dkt. No. 12; Dkt. No. 31 at 4-5; Dkt. No. 52 at 7-8.[2])  The Terms of Service contained the following forum selection and choice of law clause:

> The laws of California, U.S.A., excluding California's conflict of laws rules, will apply to any disputes arising out of or relating to these terms or the Services.  All claims arising out of or relating to these terms or the Services will be litigated exclusively in the federal or state courts of Santa Clara County, California, USA, and you and Google consent to personal jurisdiction in those courts.

(Dkt. No. 52 at 8.)  The District of Massachusetts, over Plaintiff's objection, found the Terms of Service applied to her claim and transferred the case to the Northern District of California in August 2015 while declining to rule on the motion to dismiss.  (Dkt. No. 31.)  Two days before this Court was scheduled to hear the still pending motion to dismiss, the parties filed a stipulation allowing Plaintiff to amend her complaint.  (Dkt. No. 48.)

Plaintiff's FAC alleges four causes of action: (1) unfair and deceptive acts and practices in violation of Massachusetts General Law Chapter 93A, (2) unfair or deceptive acts or practices in violation of California's Consumers Legal Remedies Act ("CLRA"), (3) unlawful or unfair business practices in violation of California's Unfair Competition Law ("UCL"), and (4) quasi-contract or unjust enrichment.  (FAC ¶¶ 42-75.)  Plaintiff brings the FAC as a putative class action

---

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

1   under Federal Rule of Civil Procedure 23 with two proposed classes: a "Massachusetts Class"[3]

2   and a "Nationwide Class."[4]  Plaintiff seeks monetary damages, including double or treble

3   damages, statutory damages, interest, as well as restitution, attorney's fees, and expenses.  (*Id.* at

4   16.)  In sum, Plaintiff alleges that Google does not tell users that it profits from the reCAPTCHA

5   prompt transcriptions, and that by misrepresenting or omitting that fact, Google extracts free labor

6   from users.  (*Id.* ¶¶ 22, 27-29.)  Google responded with the present motion to dismiss for failure to

7   state a claim under Federal Rule of Civil Procedure 12(b)(6).  (Dkt. No. 52.)

### LEGAL STANDARDS

8       A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the

9   sufficiency of the complaint where the action fails to allege "enough facts to state a claim to relief

10  that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has

11  facial plausibility when the plaintiff pleads factual content that allows the court to draw the

12  reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility

13  standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that

14  a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations

15  omitted).  Under Federal Rule of Civil Procedure 8(a)(2) a party is only required to make "a short

16  and plain statement of the claim showing that the pleader is entitled to relief, in order to give the

17  defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S.

18  at 555 (internal citations and quotations omitted).  For purposes of ruling on a Rule 12(b)(6)

19  motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the

20  pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire &*

21  *Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  However, even under the liberal pleading

22  standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the

23  grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic

24  recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (internal

---

25
26  [3] The Massachusetts Class would consist of "[a]ll persons who have responded to a reCAPTCHA prompt in order to access a website or certain features of a website while they were Massachusetts residents."  (FAC ¶ 31.)

27  [4] The Nationwide Class would consist of "[a]ll persons who have responded to a reCAPTCHA presented to such person as part of their use of a Google service in order to access a website or certain features of a website while they were United States residents."  (FAC ¶ 32.)

28

citations and quotations omitted).  "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

If the Court concludes that a Rule 12(b)(6) motion to dismiss should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc).

### DISCUSSION

Google moves to dismiss the FAC on numerous grounds: (1) Plaintiff's claims under Massachusetts law are contractually barred by the choice of law provision contained in Google's Terms of Service, to which Plaintiff agreed, (2) Plaintiff has failed to state a claim under either the CLRA or UCL, including by failing to allege fraud with specificity as required by Federal Rule of Civil Procedure 9(b), (3) the CLRA does not apply to Plaintiff's claim because reCAPTCHA is software, and thus neither a good nor a service under the statute, and (4) Plaintiff's claims for quasi-contract or unjust enrichment do not exist under California law or are barred by Google's Terms of Service.  The Court addresses each argument in turn.

### A.    Plaintiff's Claim Under Massachusetts Law is Barred

Google argues that the California choice of law provision in Google's Terms of Service, to which Plaintiff agreed when she signed up for her Gmail account, bars Plaintiff's claim under Massachusetts law.  Google bases this argument partly on the District of Massachusetts's transfer order, which concluded the forum selection clause in Google's Terms of Service applied to Plaintiff's claim.  Plaintiff counters that the choice of law clause cannot preclude her from bringing her Massachusetts claim because Section 9 of Massachusetts General Law ("MGL") Chapter 93A, which provides remedies for consumers, is not waivable.[5]

Federal courts sitting in diversity jurisdiction look to the law of the forum state when making choice of law determinations.  *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir.

---

[5] "Chapter 93A provides a cause of action to consumers who have been injured by an unfair method of competition or unfair or deceptive acts or practices in the conduct of any trade or commerce."  *Anderson v. Comcast Corp.*, 500 F.3d 66, 68 (1st Cir. 2007) (internal quotation marks omitted).

2005).  Although this case was originally file in the District of Massachusetts, because it was transferred here due to a contractual forum-selection clause, California is considered the forum and thus California choice of law rules govern.  *See Atlantic Marine Constr. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S.Ct. 568, 582-83 (2013).  California's choice of law rules "reflect strong policy considerations favoring the enforcement of freely negotiated choice-of-law clauses" in contracts.  *Nedlloyd Lines B.V. v. Sup. Ct.*, 3 Cal. 4th 459, 462 (1992).  Thus, choice of law provisions will be enforced in California unless "(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties['] choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state."  *Id.* at 465.  Where "either part of the test is met" the "court must decide whether the law of the chosen state is contrary to a fundamental policy of California."  *Simulados Software, Ltd. v. Photon Infotech Private, Ltd*., 40 F. Supp. 3d 1191, 1197 (N.D. Cal. 2014).

Plaintiff does not dispute that, as the Massachusetts court found in transferring this action, she agreed to Google's Terms of Service when she signed up for her Gmail account.   (Dkt. No. 31 at 6.)  The Terms of Service contained a choice of law clause indicating that "[t]he laws of California . . . will apply to any disputes arising out of or relating to these terms or the Services."  (*Id.*)  Plaintiff does not argue this choice of law provision does not apply to her claim.  Nor does she argue that under the *Nedlloyd* test the Massachusetts claims survives.  In any event, it does not. As for the first part of the test, California has a substantial relationship to Google, and as for the second, Massachusetts does not have a "materially greater interest" in this dispute than California.  Thus, under California choice-of law, the contractual choice of California law governs.

Plaintiff has a different, and, as far as the Court can tell, unprecedented argument.  She contends that even though Massachusetts does not have a materially greater interest in this dispute than California, California would not enforce the parties' choice of California law because consumer claims under Section 9 of Massachusetts General Law Chapter 93A are not waivable. *See, e.g.*, *Anderson v. Comcast Corp.*, 500 F.3d 66, 77 (1st Cir. 2007) (finding four-year statute of limitations for such claims not waivable by contractual agreement given, in part, the "importance

accorded to the four-year statute of limitations for consumers by the legislature"); *Canal Elec. Co. v. Westinghouse Elec. Corp.*, 548 N.E.2d 182, 187 (Mass. 1990) (noting it would not ordinarily "effectuate a *consumer*'s waiver of rights under c. 93A").

Plaintiff relies on two California cases to support her contention. *See Am. Online, Inc. v. Superior Court*, 90 Cal. App. 4th 1, 20 (2001), as modified (July 10, 2001) (declining to enforce a forum selection clause and related choice-of-law clause because enforcement would violate the California public policy embodied in the CLRA and its anti-waiver provision); *Walter v. Hughes Commc'ns, Inc.*, 682 F. Supp. 2d 1031, 1041 (N.D. Cal. 2010) (declining to enforce choice of law provision because it conflicted with California fundamental policy with respect to remedies for consumer protection violations). These California cases held that contractual provisions choosing a non-California forum were unenforceable because the consumer protections available in the foreign states were substantially less than the protections available under California law. *See Am. Online, Inc.*, 90 Cal. App. 4th  at 16-18 (noting that Virginia consumer protection laws provided materially less protection than California because Virginia law did not authorize class actions, allowed only limited injunctive relief, and did not allow enhanced remedies for disabled and senior consumers, or punitive damages)[6]; *Walter*, 682 F. Supp. 2d 1031, 1041 (N.D. Cal. 2010) (concluding that the lack of punitive damage remedies under Maryland law ran afoul of California consumer protection law and "would deprive consumers of remedies available and thus be contrary to California public policy."). Plaintiff makes a similar argument here. She contends that the CLRA and UCL consumer protections are substantially less robust than under Massachusetts law, section 9 of Chapter 93A, and therefore California would not enforce the California choice of law provision.

Plaintiff first contends that California's "injury" requirement means that the CLRA and UCL provide less protection than Chapter 93A. Specifically, the UCL restricts standing "to

---

[6] The *America Online* court found that these differences between California and Virginia consumer protection law provided an alternate basis to decline to enforce the forum selection and choice of law provisions, but noted that such a comparison was not required as enforcing the clauses would "inevitab[ly] ... eliminate" the specific protections the California Legislature enacted and made unwaivable. *Id.* at 14. Another more recent California Court of Appeals decision concluded that such a comparison was *required* "to determine whether enforcing a forum selection and choice-of-law clause would violate California's public policy embodied in its governing statutes." *Verdugo v. Alliantgroup, L.P.*, 237 Cal. App. 4th 141, 157 (2015), as modified on denial of reh'g (June 25, 2015).

United States District Court
Northern District of California

persons who have suffered injury in fact and have lost money or property as a result of the unfair competition." *See Kinojos v. Kohl's Corp*., 718 F.3d 1098, 1104 (9th Cir. 2013). The CLRA provides standing to a consumer who suffers "any damage" as a result of an unlawful act. *Id*. at 1108. While Massachusetts may not require "lost money or property," it does require that a plaintiff suffer injury. In *Hershenow v. Enter. Rent-A-Car Co. Of Boston, Inc*., 445 Mass. 790 (2006), the Massachusetts Supreme Court explained:

> Under the plaintiffs' theory of "injury," any consumer contract, oral or written, that violates the requirement of law in any respect, i.e., is noncompliant with any statute, rule regulation or court decision, automatically constitutes an "injury" under G.L. c. 93A (is an injury per se) entitling the plaintiff to recover statutory damages, attorney's fees, and costs, even though the plaintiff cannot demonstrate that the illegal contract (the invasion of a legally protected interest) causes any loss. There is nothing to suggest that the Legislature ever intended such a result, it is contrary to the regulation promulgated by the Attorney General, see note 11, supra, and this court has never sanctioned that view.9
>
> Every consumer is, of course, entitled to the full protection of law. If any person invades a consumer's legally protected interests, and if that invasion causes the consumer a loss—whether that loss be economic or noneconomic—the consumer is entitled to redress under our consumer protection statute. A consumer is not, however, entitled to redress under G.L. c. 93A, where no loss has occurred. To permit otherwise is irreconcilable with the express language of G.L. c. 93A, § 9, and our earlier case law.

*Id*. at 801-02. Thus, under Chapter 93A, as under the CLRA, Plaintiff must show that Google's failure to disclose the secondary use for the second reCAPTCHA prompt caused her a loss. *See Kinojos*, 718 F.3d at 1108 (holding that the CLRA's "any damage" requirement includes "any pecuniary damage as well as opportunity costs and transactions costs that result when a consumer is misled by deceptive marketing practices"). *Tyler v. Michaels Stores, Inc*., 464 Mass. 492, 504 (2013) does not persuade the Court otherwise as the *Tyler* plaintiff had suffered a loss. *Id*. ("When a merchant acquires personal identification information in violation of § 105(a) and uses the information for its own business purposes, whether by sending the customer unwanted marketing materials or by selling the information for a profit, the merchant has caused the consumer an injury that is distinct from the statutory violation itself and cognizable under G.L. c. 93A, § 9."). Thus, the standing requirements of the CLRA and section 9 of Chapter 93A are not so different as to render the parties' choice of California law unenforceable.

Plaintiff next contends that Massachusetts law affords consumers more protection because unlike the CLRA, it does not require a consumer to show reliance.  While Chapter 93A Section 9 does not require a "plaintiff  [to] show proof of actual reliance on a misrepresentation under c. 93A, § 9," *see Int'l Fid. Ins. Co. v. Wilson*, 387 Mass. 841, 850 (1983), a plaintiff must still establish a causal connection between the alleged misrepresentation and the alleged injury under Section 93A.  *See Ferola v. Allstate Life Ins. Co*., No. 050996, 2007 WL 2705534, at *12 (Mass. Super. Aug. 30, 2007) ("A practice is deceptive "if it 'could reasonably be found to have caused a person to act differently from the way he [or she] otherwise would have acted."); *Heller Fin. v. Ins. Co. of N. Am.*, 410 Mass. 400, 409 (1991) (plaintiff must show "a causal relationship existed between the misrepresentation and the injury.").  A practice is only deceptive under Massachusetts's law "if it could reasonably be found to have caused a person to act differently from the way he [or she] otherwise would have acted." *Aspinall v. Philip Morris Companies, Inc*., 442 Mass. 381, 394 (2004) (internal citation and quotation marks omitted).  Reliance and causation are intertwined; indeed, California courts often treat them as interchangeable.  *See, e.g*., *Red v. Kraft Foods, Inc.*, No. CV 10-1028-GW AGRX, 2012 WL 8019257, at *7 (C.D. Cal. Apr. 12, 2012) ("As for Plaintiffs' CLRA claims, while individualized reliance (i.e. causation) is an element of a CLRA claim (in contrast to UCL and FAL claims), if there have been material misrepresentations made to the entire class, then the Court will infer a presumption of reliance as to the class, and individualized causation need not be shown" citing *In re Vioxx Class Cases*, 180 Cal.App.4th 116, 129 (2009); *In re Gonzales*, No. ADV. 05-90521-B7, 2007 WL 7216267, at *7 (Bankr. S.D. Cal. Mar. 23, 2007) ("causation can be intertwined with reliance, particularly in the circumstances of nondisclosure of a material fact.")).

Plaintiff has thus failed to point to any substantive differences between Massachusetts and California law that would offend either state's public policy.  Both require a causal connection between the alleged misrepresentation and Plaintiff's actions which result in a loss. Moreover, even if there was a fundamental difference, Plaintiff has not cited any case in which a California court refused to apply California law pursuant to a valid contractual choice of law provision because California law offered fewer protections than another state's law.  The choice of law provision is thus enforceable and Plaintiff's claim under Chapter 93A must be dismissed.

**B.      Plaintiff's CLRA Claim Fails**

"To state a claim under [Section 1770(a)(5) of the CLRA], a plaintiff must allege: (1) a misrepresentation; (2) reliance on that misrepresentation; and (3) damages caused by that misrepresentation." *In re Sony PS3 Other OS Litig.*, 551 Fed. App'x 916, 920 (9th Cir. 2014); *Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1200 (N.D. Cal. 2014) (same).  Section 1770(a)(5) includes "both representations, per the explicit text of the statute, as well as omissions." *Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 996 (N.D. Cal. 2013). "To establish the causal nexus between the omission and a plaintiff's harm, a plaintiff must plead that she would not have purchased the product or service at issue if she had known the material fact that Defendant allegedly omitted." *Doe v. SuccessfulMatch.com*, 70 F. Supp. 3d 1066, 1076 (N.D. Cal. 2014).

**1.      Plaintiff Fails to Identify a Misrepresentation**

A CLRA claim based on a defendant's omission must be based on an omission "contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Mui Ho*, 931 F. Supp. 2d at 996.  Plaintiff relies on the latter theory.  (Dkt. No. 49 ¶¶ 52-54.)

Under the CLRA a defendant has an obligation to disclose information in four circumstances:

> (1) when the defendant is the plaintiff's fiduciary; (2) when the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations that are misleading because some other material fact has not been disclosed.

*Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 255 (2011)*; see also In re Ford Tailgate Lit.*, 2015 WL 7571772 * 11 (N.D. Cal. Nov. 25, 2015)(same).  Plaintiff insists that Google had a duty to disclose under the second, third and fourth circumstances.  Each requires a showing that the omitted fact is "material."  *See In re Ford Tailgate Lit.*, 2015 WL 7571772 at *11 (holding that since the CLRA plaintiff does not allege a fiduciary relationship, the plaintiff must allege a failure to disclose "material" information).

Plaintiff fails to allege facts that plausibly support an inference of a duty to disclose. First, Plaintiff does not allege what representations she encountered when she signed up for Gmail; instead, she merely alleges that as a condition for signing up for Gmail, she had to respond to a

United States District Court
Northern District of California

reCAPTCHA prompt by typing two words.  (Dkt. No. 49 ¶ 8.)  For this reason, alone, her claim fails.

Second, Plaintiff fails to allege the non-disclosure of a "material" fact.  The FAC includes a screenshot of a Google reCAPTCHA prompt (although it does not allege that this is the prompt Plaintiff encountered):



(*Id.* ¶ 18.)   This prompt advises the user that it is "necessary to prevent automated signups."  The FAC also alleges that other reCAPTCHA versions represent that they ensure that the user "is not a robot."  (Dkt. No. 49 ¶ 53.)  Plaintiff contends that these versions are misrepresentations because they omit disclosing that the second reCAPTCHA word is used for transcription services from which Google profits rather than for security purposes.  Assuming that such a disclosure is omitted, Plaintiff fails to allege any facts that plausibly support an inference that the fact omitted is material.  "A fact is deemed 'material,' and obligates an exclusively knowledgeable defendant to disclose it, if a 'reasonable [consumer]' would deem it important in determining how to act in the transaction at issue."  *Collins v. eMachines, Inc.*, 202 Cal.App.4th at 256.  As the FAC does not allege that had the omitted fact been disclosed, Plaintiff would not have completed the reCAPTCHA (and thus not signed up for a free Gmail account), or that the omitted information would otherwise have been important to Plaintiff's decision to spend a few seconds typing a word in order to receive a free email account, it does not allege facts sufficient to plausibly support the materiality of the omitted information.  *See In re Carrier IQ*, 78 F. Supp. 3d 1051, 1113 (N.D. Cal. 2015) (plaintiffs showed omitted facts were material by alleging that had they been aware of the installation and functionality of the . . . Software, they would not have purchased their mobile

devices"); *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1138 (N.D. Cal. 2010) (omitted fact material where plaintiffs allege in complaint that alleged defects were "material facts that Plaintiffs and Class Members would consider important when deciding whether to purchase and how much to pay").   For the same reason, Plaintiff's theories of a "partial" representation and concealing a "material" fact also fail.

### 2.    Plaintiff Fails to Allege Reliance

As Plaintiff has not plausibly alleged the materiality of the omitted information, it follows that she has also not plausibly alleged that she relied on the alleged omission. As explained above, she has not even alleged what representations she encountered, let alone that she relied upon them. *See Handy*, 2015 WL 4508669, at *8 (finding it "fatal to [plaintiff's] claim" that "he does not allege that saw [advertisements he describes] before he purchased [defendant's product] or that he relied upon them").  But even assuming she encountered one of the prompts identified in the FAC, she has not alleged that the omission of the challenged information in any way impacted her behavior.  *See Imber-Gluck v. Google, Inc.*, No. 5:14-CV-01070-RMW, 2014 WL 3600506, at *5 (N.D. Cal. July 21, 2014) (concluding that the plaintiff had not sufficiently alleged reliance or "materiality because she has not alleged that she would have acted differently had she been aware of" the alleged misrepresentation).

Plaintiff's insistence that she is nonetheless entitled to an inference of reliance is wrong. None of the cases she cites support an inference of reliance where, as here, the Plaintiff has failed to allege what she saw, what she believed as a result, how knowledge would impact her behavior, or facts that otherwise support a reasonable inference that an omitted fact was material.  *See ,e.g.*, *Morales v. Unilver U.S., Inc.*, No. 2:13-2213 WBS, 2014 WL 1389613, at *3 (E.D. Cal. Apr. 9, 2014) (plaintiffs alleged "defendant's representations were a substantial factor in their decision to purchase the product"); *Bruton v. Gerber Prods Co.*, 961 F. Supp. 2d 1062, 1087-88 (N.D. Cal. 2013) (plaintiff plausibly alleged reliance where she alleged she "read the labels," and "relied on Defendants' representations to select their products over the others" and "would not otherwise have purchased" them); *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 222-23 (2013) (plaintiff's reliance inferred because although she did not see a footnote that qualified an offer for "unlimited" calling plans as subject to fair usage, she did state she relied on misleading "unlimited" language);

*Kwikset Corp. v. Sup. Ct.*, 51 Cal. 4th 310, 327-28 (2011) (standing shown where plaintiffs alleged in the complaint that they "saw and relied on the labels for their truth in purchasing [defendant's] locksets" and that they "would not have bought the lockets otherwise"). Further, in *Figy v. Amy's Kitchen, Inc.*, No. CV 13-03816 SI, 2013 WL 6169503 (N.D. Cal. Nov. 25, 2013), which Plaintiff also cites, the court actually granted defendant's motion to dismiss because the plaintiff did not even "at a minimum allege that he saw the representation at issue." *Id.* at *4.

### 3.    Plaintiff Fails to Allege Damages

Plaintiff has also not alleged that she suffered any damages as a result of the alleged misrepresentation. At best, she alleges that Google profited from her allegedly uninformed decision to complete the two-word reCAPTCHA. But Google's profit is not Plaintiff's damage. *See In re Google, Inc. Privacy Policy Litig.*, No. C-12-01382-PSG, 2013 WL 6248499, at *5 (N.D. Cal. Dec. 3, 2013) ("Plaintiffs' allegations certainly plead that Google made money using information about them for which they were provided no compensation beyond free access to Google's services. But an allegation that Google profited is not [] equivalent to an allegation that such profiteering deprived Plaintiffs' of economic value from that same information.").

Plaintiff's attempt to analogize this situation to *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785 (N.D. Cal. 2011), is misplaced. In *Fraley*, the plaintiffs alleged that they suffered damages when Facebook used their names, photographs and identities to endorse third-party products to their friends. *Fraley*, 830 F. Supp. 2d at 799. The *Fraley* court held that plaintiffs' allegation that the defendant violated the plaintiffs' statutory right to privacy and that Facebook failed to compensate them for their valuable endorsement of third-party products sufficiently alleged injury. *Id.* Here, in contrast, Plaintiff has not alleged any facts that plausibly suggest the few seconds it takes to type a second word is something for which a reasonable consumer would expect to receive compensation. *Cf. Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946) ("When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded. Split-second absurdities are not justified..."); *Gillings v. Time Warner Cable LLC*, 583 Fed.Appx. 712, 714 (9th Cir. July 21, 2014) (federal *de minimis* wage and hour doctrine applies under California law).

Plaintiff has therefore failed to allege any of the required elements of her CLRA claim.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

#### 4.      ReCAPTCHA is not a CLRA good or service

Even if Plaintiff could cure these pleading defects, there remains the question of whether the CLRA applies at all.  The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer," including "[r]epresenting that . . . services have . . . characteristics . . . which they do not."  Cal. Civ. Code § 1770(a), (a)(5).  Plaintiff argues Google violated Section 1770(a)(5)'s prohibition on "[r]epresenting that . . . services have . . . characteristics . . . which they do not" by "represent[ing] that reCAPTCHA prompts performed a security purpose" when, in fact, only one of the two words did so.  (FAC ¶¶ 51, 53, 66.)   The CLRA defines services as "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods."  Cal. Civ. Code § 1761(b).  "Goods" are defined as "tangible chattels bought or leased for use primarily for personal, family or household purposes."  *Id.* § 1761(a).

The FAC alleges in one place that Google provides a "service" called reCAPTCHA.  (FAC at ¶¶ 2-3), but in another it identifies Google's services as "including, by way of example, Gmail, Google Search, You[T]ube, Maps, and Google+."  (*Id.* ¶ 55.)  ReCAPTCHA is the service that generated the alleged misrepresentation and extracted what Plaintiff characterizes as her free labor.  At oral argument, Plaintiff urged that reCAPTCHA is a component of the broader Gmail service as the prompt is necessary to acquire a Gmail account and therefore Gmail is the "service" at issue on the CLRA claim.  Not so: reCAPTCHA and Gmail are not intrinsically entwined.[7]  As the FAC itself alleges, Gmail is just one of many programs that uses reCAPTCHA.  (FAC at ¶ 16.).  Plaintiff could have encountered the reCAPTCHA service while using Ticketmaster, Craiglist, Youtube, or as here, Gmail.  (*Id.*)  Thus, reCAPTCA is the program at issue.[8]

---

[7] The Court likewise does not adopt Google's argument that regardless of whether the good and/or service at issue is Gmail or reCAPTCHA the CLRA does not apply because both are software.  If the service at issue was Gmail, whether it is covered by the CLRA would be a closer question.  Because it is not, the Court declines to reach the issue.

[8] The Court's conclusion is not inconsistent with the District of Massachusetts' finding in its Transfer Order that Plaintiff's complaint broadly arises out of or relates to Gmail and therefore the Gmail Terms of Use apply.  (Dkt. No. 31 at 7.)  The question here is not whether Plaintiff's claim relates to Gmail, but whether the program generating the alleged misrepresentation is Gmail or reCAPTCHA.  For the reasons explained above, it is reCAPTCHA.  Indeed, before the

14

United States District Court
Northern District of California

1    The question, then, is whether reCAPTCHA is a good or service.  Google argues that

2  because it is software it is neither.  There is considerable support for this conclusion.  In

3  *Ferrington v. McAfee, Inc.*, No. 10-CV-01455-LHK, 2010 WL 3910169 (N.D. Cal. Oct. 5, 2010),

4  the court concluded that software, as with credit and insurance, is not a good under the CLRA; nor

5  is it a service.  *Id*. at *18-19 (citing *Fairbanks v. Superior Court*, 46 Cal.4th 56, 61 (2009)

6  (holding that life insurance is not a tangible chattel and therefore not a good under the CLRA));

7  *Berry v. American Exp. Publishing, Inc.*, 147 Cal. App. 4th 224, 229 (Cal.Ct.App. 2007) (holding

8  that a credit card is not a good for purposes of the CLRA)); *see also In re iPhone Application

9  Litig.*, 844 F. Supp. 2d 1040, 1070 (N.D. Cal. 2012) ("to the extent Plaintiffs' allegations are based

10  solely on software, Plaintiffs do not have a claim under the CLRA.").

11    Plaintiff unpersuasively suggests that there is a "split of authority on this issue" relying on

12  *Haskins v. Symantec Corp.*, No. 13-CV-01834-JST, 2013 WL 6234610 (N.D. Cal. Dec. 2, 2013).

13  The *Haskins* court concluded that antivirus software was a "good" because it could be purchased

14  both online and in a store.  *Id*. at *10.  The antivirus software was likely a "service" to the extent

15  that "it continually updates and runs regular virus checking."  *Id* at 10, n.9 (noting that to the

16  extent it was a service "a plaintiff would only be able to bring a CLRA claim for violations

17  relating to the process of updating and servicing the computer.").  The circumstances here are

18  inapposite.  ReCAPTCHA is only available online and it does not provide users with any kind of

19  ongoing service.  *See also In re iPhone Application Litig.*, 844 F. Supp. 2d at 1071 (concluding

20  that on amendment the plaintiffs had pled a good under the CLRA because the claim did not arise

21  out of the download of a free app, but rather, out of a claim that the iPhone did not perform as

22  promised).  And, while in the Court's opinion something might qualify as a "good" even if only

23  purchased online, reCAPTCHA—a one-time use software program used as a gate-keeper to

24  Internet sites—does not so qualify.

25    The other cases upon which Plaintiff relies are similarly inapposite.  *See, e.g.*, *Ladore v.

26  Sony Computer Entm't Am., LLC*, 75 F. Supp. 3d 1065, 1073 (N.D. Cal. 2014) (rejecting Sony's

27  argument that "software, software licenses and/or online [video] game features" were not goods

because it "ignore[d] the critical fact that [plaintiff] did not simply buy or download (arguably)

28  _____

Massachusetts court Plaintiff argued that reCAPTCHA is the service at issue on their claims.  (*Id.*)

15

United States District Court
Northern District of California

'intangible' software, or otherwise play an online game. Rather, [plaintiff[ went to a brick-and-mortar store (Best Buy) where he paid for and received a tangible product—namely the Killzone game disc, which came in a Killzone box and was accompanied by various tangible pieces of documentation"); *Hawthorne v. Umpqua Bank*, No. 11-CV-06700-JST, 2013 WL 5781608, at *11 (N.D. Cal. Oct. 25, 2013) (concluding that a debit card is a service under the CLRA); *Perrine v. Sega of Am., Inc., No.* C 13-01962 JSW, 2013 WL 6328489, at *4 (N.D. Cal. Oct. 3, 2013) (concluding that plaintiff stated a claim under the CLRA where the plaintiffs purchased a physical copy of videogame and alleged that the defendants misrepresented certain features of the game). Plaintiff has cited to no case, and indeed the Court is unaware of even one, that holds that software utilized entirely online constitutes a CLRA good or service.  For this reason, too, the CLRA claim fails.[9]

### C.      Plaintiff Fails to Allege a Claim Under the UCL

The UCL prohibits any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  "Its coverage has been described as 'sweeping,' and its standard for wrongful business conduct is 'intentionally broad.'"  *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 854 (N.D. Cal. 2012). "Each of the three 'prongs' of the UCL provides a 'separate and distinct theory of liability' and an independent basis for relief."  *Elias*, 903 F. Supp. 2d at 854.

#### 1.      Plaintiff Fails to State a Claim Under the UCL's Unlawful Prong

"The unlawful prong of the UCL prohibits anything that can properly be called a business practice and that at the same time is forbidden by law."  *Ferrington v. McAfee, Inc.*, No. 10-CV-01455-LHK, 2010 WL 3910169, at *14 (N.D. Cal. Oct. 5, 2010).  In doing so, the unlawful prong "borrows violations of other laws and treats them as unlawful practices, which the UCL then makes independently actionable."  *Elias*, 903 F. Supp. 2d at 858-59.

Plaintiff premises her unlawful prong UCL claim on Google's alleged CLRA violation, and in her opposition brief, also on her Massachusetts claim.  (FAC ¶ 66; Dkt. No. 54 at 13-14.) As Plaintiff fails to state a claim under either statute, she necessarily cannot state a UCL unlawful prong claim.  *See Kimball v. Flagstar Bank F.S.B.*, 881 F. Supp. 2d 1209, 1224 (S.D. Cal. 2012);

---

[9] Given the Court's conclusion that the CLRA does not apply to Plaintiff's claim, it is unnecessary reach Google's third argument that the claim should be dismissed because Plaintiff failed to comply with the CLRA's pre-suit notice requirements.

*In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1091 (S.D. Cal. 2010).

> **2.      Plaintiff Fails to State a Claim Under the UCL's Unfair Prong**

"A business practice is unfair within the meaning of the UCL if it violates established public policy *or* if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1473 (2006) (emphasis added). "In determining whether a business practice is unfair under this approach, California courts balance the 'impact on its alleged victim' against 'the reasons, justifications, and motives of the alleged wrongdoer." *Id.* "In short, this balancing test must weigh the utility of the defendants' conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012).

Plaintiff argues that Google's reCAPTCHA practice violates California's public policy "that people should be paid for work they perform," as reflected in state minimum and unpaid wage laws, as well as consumer protection and false advertising laws. (FAC ¶ 67; Dkt. No. 54 at 14-15.) Yet Plaintiff fails to cite to any specific law indicating that California in fact has such a broad policy; and indeed, it would need to be a broad policy to require what Plaintiff alleges—that a person who types a single word as a condition for receiving a free service is entitled to compensation for such "labor." Thus, no violation of California public policy is alleged. *See Elias*, 903 F. Supp. 2d at 859 (plaintiff failed to state a claim under unfair prong of UCL in part because he did "not reference any established public policy that [defendant's] actions" violated).

Plaintiff's reliance on *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785 (N.D. Cal. 2011), is, once again, misplaced. The *Fraley* court held that plaintiffs properly alleged fraudulent conduct where they argued "Facebook acted fraudulently by knowingly and intentionally failing to seek and acquire members' informed consent regarding changes to the Terms of Use"—changes that allowed Facebook to use plaintiffs' "likes" of a particular page in advertisements. *Id.* at 814. On this basis, Plaintiff argues Google's practice is unfair because "Google did not obtain website users' informed consent to Google's use of their labor for Google's commercial purposes." (Dkt. No. 54 at 14.) First, Plaintiff relies on the portion of *Fraley* that discusses a "fraudulent" prong UCL claim, not an "unfair" claim. More importantly, Plaintiff overlooks a key element of *Fraley*:

17

Facebook's practices potentially ran afoul of plaintiffs' California statutory right to publicity, which explicitly recognizes the commercial value of plaintiffs' identity and endorsement. *Fraley*, 830 F. Supp. 2d at 814.  As noted above, Plaintiff failed to identify any statute assigning value to the few seconds it takes to transcribe one word.

Google's behavior is also not immoral and oppressive because the harm—if any—of typing a single word without knowledge of how Google profits from such conduct does not outweigh the benefit.  Google's profit is not the only benefit the Court considers in this balancing test—completing the prompt also entitles users to a *free* Gmail account.  Moreover, users' transcriptions increase the utility of other free Google services such as Google Maps or Google Books.  Plaintiff has failed to allege how these numerous benefits outweigh the few seconds it takes to transcribe one word.

### 3.    Plaintiff Fails to State a Claim Under the UCL's Fraudulent Prong

To "[s]tate a claim under [t]he fraudulent prong of the UCL, it is necessary only to show that members of the public are likely to be deceived by the business practice." *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1111 (N.D. Cal. 2015) (internal quotation marks omitted).  However, after "Proposition 64, the California Supreme Court has held that a plaintiff stating a claim under the 'fraud' prong must plead actual reliance." *Id.*  Actual reliance under the UCL requires plaintiffs to allege that "the defendant's misrepresentation or nondisclosure was an immediate cause of the plaintiff's injury-producing conduct." *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009) (internal quotation marks omitted).  A plaintiff can do so by showing "that in [the absence of the misrepresentation] the plaintiff in all reasonable probability would not have engaged in the injury-producing conduct." *Id.* (internal quotation marks omitted)  "While a plaintiff need not demonstrate that the defendant's misrepresentations were the sole or even the predominant or decisive factor influencing his conduct, the misrepresentations must have played a substantial part in the plaintiff's decisionmaking." *SuccessfulMatch.com*, 70 F. Supp. 3d at 1076 (internal quotation marks and citation omitted).

As with Plaintiff's CLRA claim, "[o]missions can [also] form the basis of a fraudulent prong UCL claim." *In re Carrier IQ, Inc.*, 78 F. Supp. 3d at *1112.  To bring a UCL claim based on a defendant's omission, the "omission must be contrary to a representation actually made by

the defendant, or an omission of a fact the defendant was obliged to disclose." *Mui Ho*, 931 F. Supp. 2d at 996; *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 925 (N.D. Cal. 2012).   "To establish the causal nexus between the omission and a plaintiff's harm, a plaintiff must plead that she would not have purchased the product or service at issue if she had known the material fact that Defendant allegedly omitted." *SuccessfulMatch.com*, 70 F. Supp. 3d at 1076.

Finally, "a plaintiff must have suffered an injury in fact, which may be shown when he or she (1) expended money due to the defendant's acts[;] (2) lost money or property; or (3) been denied money to which he or she has a cognizable claim." *Handy v. LogMein, Inc.*, No. 1:14-cv-01355-JLT, 2015 WL 4508669, at *6 (E.D. Cal. July 24, 2015) (internal quotation marks and citation omitted). "The requirement that injury be economic renders standing under the UCL 'substantially narrower than federal standing which may be predicated on a broader range of injuries.'" *Donohue*, 871 F. Supp. 2d at 919.

For the reasons explained in connection with the CLRA claim, Plaintiff has not alleged an actionable misrepresentation, reliance or loss or causation.  Nor has Plaintiff adequately alleged an economic injury.  Plaintiff asserts that California has a public policy "that people should be paid for work they perform," and cites *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163 (2000), for the proposition that "unlawfully withheld wages are property . . . within the contemplation of the UCL."  (Dkt. No. 54 at 14, 21.)  *Cortez* concluded that under the UCL, a "defendant may be compelled to restore unpaid wages;" however, it is inapposite as it applied to "defendant's employees and former employees."  23 Cal. 4th at 168.  Plaintiff and Google have no current or former employer-employee relationship, and Plaintiff fails to explain how *Cortez* more broadly provides for a UCL claim for withheld wages against non-employers for typing a single word as a condition of receiving a free email account. Plaintiff also cites broadly to the California Labor Code, but points to no specific provision that would entitle Plaintiff or any member of the class to payment for the *de minimus* time required to transcribe a single word.[10]  *See, e.g.*, Cal.

_____

[10] Google raises the possibility that Plaintiff may be unable to show entitlement to payment even if an employer-employee relationship exists because "numerous courts have held that daily periods of approximately 10 minutes [or less] are de minimis" and non-compensable under certain circumstances.  *Troester v. Starbucks Corp.*, No. CV 12-7677 GAF, 2014 WL 10040983, at *3-5 (C.D. Cal. Mar. 7, 2014), *appeal filed*, No. 14-5550 (9th Cir. Apr. 2, 2014) (citing cases; addressing three factor *Lindow* test courts apply to make such a determination before dismissing plaintiff's claim for lost wages as to the approximately four minutes plaintiff spent closing up

United States District Court
Northern District of California

Labor Code § 200(a) (defining "wages" as "all amounts for labor performed by *employees* of every description" (emphasis added); § 200(b) (defining labor as "labor, work, or service whether rendered or performed under contract, subcontract, partnership, station plan or other agreement if the labor to be paid for is performed personally by the person demanding payment"); § 350 (defining "employee" as "every person . . . rendering actual service in any business for an employer, whether gratuitously or for wages or pay[]").  Plaintiff fails to cite to any case that supports her theory that a non-employee transcribing a single word is owed compensation.

Finally, Plaintiff argues that she suffered an economic injury because she "surrendered more in the reCAPTCHA transaction (i.e., additional time and labor) than she would have surrendered had Google not required that she decipher a second image for Google's commercial purposes." (Dkt. No. 54 at 20).  Plaintiff's statement, however, does not go far enough.  As previously discussed, the question is whether Plaintiff would have changed her behavior had Google disclosed the purpose of the second word.  Absent any allegation that she would have, she suffered no injury of any sort, let alone an economic injury. As Google suggests, it strains credulity that Plaintiff or class members would forego access to a free Gmail account and higher quality Google Books or Google Maps because their brief transcription of a single word might, indirectly or directly, facilitate Google's profit earning.

Plaintiff has thus failed to plead a UCL claim.

### D.       Plaintiff's Quasi-Contract and Unjust Enrichment Claims

"[I]n California, there is not a standalone cause of action for unjust enrichment, which is synonymous with restitution."  *Astiana v. Hain Celestial Grp.*, 783 F.3d 753, 762 (9th Cir. 2015) (internal quotation marks omitted).  Instead, unjust enrichment "describe[s] the theory underlying a claim that a defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request." *Id* (internal quotation marks and citation omitted); *see also Trazo v. Nestle USA, Inc.*, 2015 WL 4196973 (N.D. Cal. July 10, 2015) (holding that claim alleging that the defendant's misleading labeling enriched the defendant at the expense of the plaintiff stated a claim for quasi-contract seeking an unjust enrichment remedy); *Donohue*, 871 F. Supp. 2d at 932 ("Restitution may be available where the defendant obtained a benefit from the plaintiff by fraud, duress,

Starbucks store after shift).

United States District Court
Northern District of California

conversion, or similar conduct."). Plaintiff's unjust enrichment claim is described as a claim for quasi-contract. (Dkt. No. 49 at 15.)

However, when a plaintiff fails "to sufficiently plead an actionable misrepresentation or omission, his [or her] restitution claim must be dismissed." *Donahue,* 871 F.Supp. 2d. at 933; *see also Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295 (2011) (finding no basis in relief under unjust enrichment claim because "[t]here being no actionable wrong, there is no basis for the relief"). In *Astiana*, for example, the court held the plaintiff could state a restitution claim based upon quasi-contract because the plaintiff adequately alleged that the defendant's misleading labels duped the plaintiff into purchasing a product. 783 F.3d at 762. Similarly, in *Romero v. Flowers Bakeries, LLC*, 2015 WL 2125004 *9 (N.D. Cal. May 6, 2015), the court held that allegations that the defendant enticed the plaintiff to purchase products through misleading labels stated a claim for quasi-contract. Here, in contrast, Plaintiff has not alleged that Defendant's alleged omission impacted her conduct in any way; thus, she has not alleged the omission was material, that she relied on the omission, or that the omission caused her any injury. She has therefore not stated a quasi-contract claim.

## CONCLUSION

For the reasons explained above, the Court GRANTS Google's motion to dismiss pursuant to Rule 12(b)(6). The dismissal is without leave to amend. As the Massachusetts claim is barred by the parties' contractual choice of California law, amendment would be futile. Amendment of the CLRA claim would also be futile given that reCAPTCHA is not a "good" or "service" under the CLRA. The UCL claim cannot be successfully amended because, among other things, Plaintiff cannot allege a loss of money or property given her lack of support for her theory that she is entitled to compensation for the few seconds it takes to transcribe one word. The quasi-contract claim cannot be amended for the same reason.

In addition, at oral argument, Plaintiff did not represent that if given leave to amend she could allege that had she known the second reCAPTCHA word was used to assist Google with its other services she would not have completed the reCAPTCHA. To the contrary, counsel represented that he had not asked Plaintiff and he did not know what she would say. (Dkt. No. 60 at 20:23-25.) Such question, of course, should have been asked and answered before this lawsuit

United States District Court
Northern District of California

was filed and pursued in two states.  Regardless, it defies common sense that the answer would be yes.  For this reason, too, leave to amend is denied.

Judgment shall be entered in Google's favor.

**IT IS SO ORDERED.**

Dated:  February 3, 2016

JACQUELINE SCOTT CORLEY
United States Magistrate Judge

United States District Court
Northern District of California

22